973 A.2d 218

**Juan RIVERA**

v.

**STATE of Maryland.**

**No. 80, Sept. Term, 2008.**

Court of Appeals of Maryland.

June 10, 2009.

Daniel H. Ginsburg and Gary E. Bair (Rachel Marblestone Kamins and Erica J. Suter, Bennett & Bair, LLC, Greenbelt), on brief, for Petitioner/Cross–Respondent.

Maureen A. Sweeney, Clinical Law Instructor, Baltimore, Brief of Amici Curiae Faculty Members of the University of Baltimore School of Law and the University of Maryland School of Law and the National Immigration Project of the National Lawyers Guild in Support of Petitioner.

Mary Ann Ince, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., Baltimore), on brief, for Respondent/Cross–Petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, IRMA S. RAKER, (Retired, Specially Assigned) and ALAN M. WILNER, (Retired, Specially Assigned), JJ.

GREENE, Judge.

In October of 2003, Juan Rivera, the petitioner, pled guilty to one count of contributing to acts, omissions, or conditions rendering a child in need of assistance in violation of Md.Code (1973, 2002 Repl.Vol.) § 3–828 of the Courts and Judicial Proceedings Article. Subsequently, Mr. Rivera sought coram nobis relief, alleging that his plea was not made voluntarily and was not supported by a factual basis. At issue in this appeal is whether the Court of Special Appeals erred in affirming the coram nobis court's conclusion that Mr. Rivera is not entitled to coram nobis relief because his plea was accepted in accordance with Maryland law. Affirming the judgment of the intermediate appellate court, we shall hold that Mr. Rivera's plea was entered voluntarily and was supported by a factual basis.

## I.

In 2003, Mr. Rivera and his wife were engaged in divorce proceedings. The Riveras have a daughter, A.R., who was fourteen years old in 2003. During the course of the divorce proceedings, Mr. Rivera met with an evaluator from the Family Division of the Circuit Court for Montgomery County regarding custody of his daughter. The evaluator conveyed that during the meeting, Mr. Rivera stated that on "one occasion [A.R.] . . . got into bed with [Rivera] and his wife . . . [and that Rivera] grabbed A.R. and got an erection." Mr. Rivera told the evaluator that when he realized that he had grabbed his daughter, he "pulled away." A.R. and Mrs. Rivera were interviewed by Child Protective Services during the same year. In her interview, A.R. indicated that her father had committed an anal intercourse act with her, when she was approximately eight years old. Mrs. Rivera informed Child Protective Services that when A.R. was eight years old, Mr. Rivera had approached her and apologized to her for "abusing A.R.," explaining that "he had been rubbing [A.R.'s] back and ended up on top of her."

On October 8, 2003, Mr. Rivera was arrested and charged with child abuse, second degree sexual offense and third degree sexual offense. After subsequent negotiations with the State's Attorneys Office, he agreed to enter into a plea agreement to one count of contributing to acts, omissions, or conditions rendering a child in need of assistance in violation of § 3–828 of the Courts and Judicial Proceedings Article.[1] Mr. Rivera is not a United States citizen and was concerned about deportation throughout the plea negotiation process.[2] At one point during the negotiations, Assistant State's Attorney, Mary Herdman, wrote a letter to Mr. Rivera's counsel addressing deportation. The letter stated:

In previous conversations that [we] have had, there was a concern that a plea to this charge would make your client deportable. I have since had an opportunity to speak to Christine Carlson, Special Agent for the U.S. Department of Homeland Security, Immigration and Customs Enforcement, who has informed me that a Contributing charge does not make a defendant eligible for deportation proceedings. It is a charge that [Immigration and Naturalization Services ("INS") ] does not "look behind" as they would with a second degree assault. Please feel free to contact Ms.

---

1. Md.Code (1974, 2002 Repl.Vol.) § 3–828 of the Courts and Judicial Proceedings Article provides:

 **Contributing to acts, omissions, or conditions rendering a child in need of assistance.**
 (a) *Prohibition.*—An adult may not willfully contribute to, encourage, cause or tend to cause any act, omission, or condition that renders a child in need of assistance.
 (b) *Child need not be adjudicated a CINA.*—A person may be convicted under· this section even if the child is not adjudicated a CINA.
 (c) *Penalty.*—An adult who violates this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $2500 or imprisonment not exceeding 3 years or both.
 (d) *Petition alleging violation.*—A petition alleging a violation of this section shall be prepared and filed by the State's Attorney.
 (e) *Standard of proof.*—If an adult is charged under this section, the allegations shall be proved beyond a reasonable doubt.

2. Mr. Rivera is a citizen of Peru. He entered the United States some time before 1997 and in 2000, adjusted his citizenship status to that of a lawful permanent resident.

Carlson at [phone number omitted] to confirm this information.

At proceedings that took place on October 12, 2004, the prosecutor explained the terms of the plea bargain. Mr. Rivera's counsel informed the court:

> I've made up a set of documents which I would eventually like to be incorporated in the court file, in a confidential sealed envelope, that deal with our plea negotiations. Because they set forth quite a large number of terms which we have all carefully worked out, and thought about, in this matter.

> \* \* \* \*

> A lot of this is because of immigration consequences, and the record should reflect that my client is a permanent resident, and that some of the terms of this plea have been worked out in terms, because of his potential immigration consequences.

The trial judge then asked Mr. Rivera a series of questions pertaining to the plea agreement. One of the court's inquiries was whether Mr. Rivera had discussed the charges in his case, as well as the terms of his plea, with his attorney. Mr. Rivera responded yes. The trial judge also informed Mr. Rivera that he could consult his attorney or the court at any time during the guilty plea proceedings if he had questions and expressly asked Mr. Rivera if he understood that he did not have to plead guilty. Subsequently, the following colloquy took place:

> **The Court:** Are you sure you want to waive all of your rights to trial and go forward with a plea of guilty?
> **Rivera:** Yes, I am sure.

> \* \* \* \*

> **The Court:** If you are not a citizen of the United States, a finding of guilty could have immigration consequences for you. Have you had a chance to discuss that issue with your attorney, if you have concerns about that?
> **Rivera:** Yes, I had the chance to discuss with my attorney.

**The Court:** And this plea has been negotiated in light of those immigration consequences, am I right?

**Rivera:** Right, yes.

**The Court:** Okay. Are you pleading guilty to this charge, because you are guilty?

**Rivera:** I'm sorry. Yes.

Ultimately, the court determined that Mr. Rivera's plea was entered voluntarily and that Mr. Rivera understood what he was doing. The State then proffered the following facts, many of which are mentioned above.

**The State:** Your Honor, had the State proceeded to trial, you would have heard evidence, that on September 12, 2003, [A.R.], age 14, disclosed to officers, and Montgomery Child Protective Services, that her father had committed an anal intercourse act with her, when she was approximately eight years old. This occurred during 1997, while the family was living . . . in Gaithersburg, Montgomery County, Maryland.

[A.R.'s Mother] was interviewed. She stated that [Rivera] had approached her in 1997, and apologized for abusing their daughter, A.R. He stated he had been rubbing [her] back and ended up on top of her.

On August 12, 2003, Rivera met with [the Custody Evaluator] in the Family Division of the Montgomery County Circuit Court. He met with the [Custody Evaluator], due to the divorce proceedings and custody issues going on with [A.R.'s Mother]. Rivera stated that his wife's allegations were totally made up.

Rivera further stated that on one occasion, A.R. came into his room at night, and got into bed with him and his wife, A.R. got in between the two adults. [Rivera] stated, he grabbed A.R. and subsequently got an erection. Rivera stated that he realized it was his daughter, and pulled away. It should be noted, that during this interview there were no sexual allegations involving Rivera, known to [the Custody Evaluator], prior to her interview. There were no other statements made by Rivera, all events occurred in Montgomery County, that would be the State's proffer.

**Rivera's Counsel:** No additions, for purposes of the plea, and just to make it clear for the record, the statement made to [the Custody Evaluator] is the defendant's version of the events.

The Circuit Court accepted the petitioner's plea of guilty. On January 24, 2005, Mr. Rivera was sentenced to 360 days incarceration and placed on supervised probation for two years.[3] Mr. Rivera filed a motion to reconsider the sentence within 90 days. When the motion was heard on January 16, 2007, the court struck the finding of guilty, entered probation before judgment, and placed Mr. Rivera on supervised probation for seven months. In March of 2007, Mr. Rivera was arrested and taken into custody by Immigration and Customs Enforcement ("ICE"). Subsequently, Mr. Rivera filed a petition for coram nobis relief.

The coram nobis court denied Mr. Rivera's petition, determining that the trial judge complied with the mandates of Maryland law when accepting Mr. Rivera's plea. After reviewing the record and listening to testimony from Mr. Rivera, his trial counsel, and Ms. Herdman, the coram nobis court concluded that the trial judge had complied with Maryland Rule 4–242(c) and that Mr. Rivera was never given any *guarantees* that his guilty plea would not later invoke deportation investigations and proceedings. The court stated:

> Every effort was made to try to protect Mr. Rivera from the deportation consequences which he is now facing and I'm also convinced that Mr. Rivera knew there was no guarantee that [deportation] would not occur. I am also satisfied from the record that the nature of the charge was adequately explained to Mr. Rivera.

---

3. Mr. Rivera also was forbidden from contacting A.R. and was required to pay a minimum amount toward A.R.'s college tuition. In addition, he was required to undergo a diagnostic examination, to be followed by therapy if recommended. The State *nolle prossed* the original charges of child abuse, second degree sexual offense, and third degree sexual offense.

Alternatively, the court denied Mr. Rivera coram nobis relief on the ground that the court lacked jurisdiction to hear the petition. The court reasoned that because a probation before judgment was ultimately entered in Mr. Rivera's case, "there was no criminal conviction that took place" and that a criminal conviction is required in order for a petitioner to have standing to seek coram nobis relief.

The Court of Special Appeals affirmed the judgment of the Circuit Court as to the denial of coram nobis relief in part, but disagreed with that court's determination that it did not have jurisdiction to grant the petition. *Rivera v. State*, 180 Md. App. 693, 952 A.2d 396 (2008). Relying on *Abrams v. State*, 176 Md.App. 600, 933 A.2d 887 (2007), the Court of Special Appeals held that because "the deportation faced by Rivera is [a] significant collateral consequence of his [probation before judgment] .... [t]he fact that the charges against Rivera ultimately were resolved by [probation before judgment] does not deprive him of standing to petition for the writ [of coram nobis]." *Rivera*, 180 Md.App. at 708, 952 A.2d at 405. In a footnote, the Court of Special Appeals observed that Mr. Rivera's case is different from the situation presented in *Holmes v. State*, 401 Md. 429, 453, 932 A.2d 698, 712 (2007), because in Mr. Rivera's case, the State never contended that Mr. Rivera waived coram nobis relief by failing to seek leave to appeal from his initial guilty plea. *Rivera*, 180 Md.App. at 708–09 n. 6, 952 A.2d at 405 n. 6. Moreover, the court noted that the record of the guilty plea proceeding did not reflect that Mr. Rivera was advised of his right to seek leave to appeal.[4] *Id.*

---

4. Recently, in *Holmes v. State*, 401 Md. 429, 932 A.2d 698 (2007), we considered how basic principles of waiver apply in coram nobis proceedings. The Court concluded that: "Following a conviction based on a guilty plea, a convicted defendant's options with respect to allegations of error are to raise them in an application for leave to appeal, or not." *Holmes*, 401 Md. at 466–67, 932 A.2d at 720. Thus, in *Holmes*, we held that when a defendant does not raise allegations of error in an application for leave to appeal, there is a rebuttable presumption that the defendant waived such allegations and unless the defendant rebuts this presumption, he or she may not raise the allegations later, in a coram

Holding that the coram nobis court had jurisdiction to consider Mr. Rivera's coram nobis petition, the Court of Special Appeals affirmed the coram nobis court's decision to deny Mr. Rivera the relief requested. *Rivera,* 180 Md.App. at 709–10, 952 A.2d at 406. The intermediate appellate court concluded that the trial judge did not commit "legal error in accepting the guilty plea, 'of constitutional or fundamental proportion' that would entitle Rivera" to such relief. *Id.* The Court of Special Appeals noted that the trial judge abided by the requirements of Maryland Rule 4–242(c).[5] *Rivera,* 180 Md.App. at 712–13, 952 A.2d at 407–08.

The Court of Special Appeals also concluded that the trial court did not abuse its discretion in determining that there was a factual basis for Mr. Rivera's plea. *Rivera,* 180 Md. App. at 715, 952 A.2d at 409. The intermediate appellate court rejected Mr. Rivera's argument that his version of the facts was the only version that the trial judge should have considered. *Rivera,* 180 Md.App. at 715–16, 952 A.2d at 409–10. The Court of Special Appeals stated that "[t]he requirement in Maryland for a factual basis for a plea rests on Rule 4–242(c), which, by its terms, recognizes that the factual basis may be derived from the State's Attorney." *Rivera,* 180

nobis proceeding. *Holmes,* 401 Md. at 475–76, 932 A.2d at 725. *Holmes* does not apply to the present case for the reasons stated by the Court of Special Appeals in its opinion in this case. *Rivera v. State,* 180 Md.App. 693, 708–09 n. 6, 952 A.2d 396, 405 n. 6 (2008) (noting that the State did not contend at the coram nobis proceeding that Mr. Rivera waived coram nobis relief by failing to seek leave to appeal from his initial guilty plea); *accord* Maryland Rule 8–131(a) ("Ordinarily, the appellate court will not decide [an issue other than jurisdiction] unless it plainly appears by the record to have been raised in or decided by the trial court. . . .").

5. In pertinent part, Maryland Rule 4–242(c) provides:

[A trial court may] accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea.

Md.App. at 715, 952 A.2d at 409. The intermediate appellate court went on to note that it was "immaterial" that Mr. Rivera did not agree with the State's version of the proffered facts. *Rivera,* 180 Md.App. at 716, 952 A.2d at 409.

The Court of Special Appeals also rejected Mr. Rivera's contention that the sentencing court was required to look only to the charge for which the plea bargain was entered, the violation of § 3–828 of the Courts and Judicial Proceedings Article, when determining if there was a factual basis for the guilty plea. *Rivera,* 180 Md.App. at 716, 952 A.2d at 410. The court stated:

> Where, as here, the charge to which the plea is taken has been bargained down from more serious charges, courts do not permit the defendant later to challenge a guilty plea on the ground of disparity between the facts giving rise to the criminal prosecution and the elements of the charge that results from the plea bargaining. Instead, the relevant charge for the factual comparison is the charge initiating the prosecution.

*Id.* Mr. Rivera petitioned this Court for certiorari and we granted his petition, as well as, the State's conditional cross-petition for certiorari. *Rivera v. State,* 406 Md. 112, 956 A.2d 201 (2008). The issues presented for review are:

> 1) Did the circuit court err in accepting a guilty plea without a factual basis to support it and did the Court of Special Appeals err in ruling that a factual basis need not conform to the elements of the offense to which the defendant pleads guilty?
>
> 2) Did the Court of Special Appeals improperly rule that Petitioner's guilty plea was voluntary where he was assured by his attorney, the prosecutor, and an Immigration and Customs Enforcement attorney that he would not be deported if he pleaded guilty when, in fact, no such assurances were possible and the plea led to Petitioner's deportation proceeding?
>
> 3) Did the Court of Special Appeals improperly reverse the circuit court's ruling that it lacked jurisdiction to consider

Rivera's motion for coram nobis relief where Rivera had successfully completed probation before judgment and the conviction he sought to challenge by his coram nobis relief had been stricken?

## II.

Mr. Rivera argues that the judgment of the Court of Special Appeals should be reversed. He contends that there was no factual basis for his guilty plea, and as such, the trial judge erred in accepting the plea. Specifically, Mr. Rivera argues that: "The State proffered facts-to which [Mr. Rivera] agreed—showing that [Mr. Rivera] got an erection one time when his daughter was in bed with him and his wife, but this proffer does not establish a basis to support the crime of contributing to a child in need of assistance," the crime to which Rivera pled guilty. Accordingly, Mr. Rivera contends that the Court of Special Appeals misapplied Rule 4–242(c) and legal precedent when it held that a "factual basis [for a guilty plea] is not constitutionally required," and that "by entering a guilty plea a defendant forfeits the right to challenge the absence of a factual basis."

Mr. Rivera posits that "where there is no agreement by the defendant with the State's version of the facts, it is impossible to ensure that the defendant is not pleading guilty to a crime he did not commit." Mr. Rivera relies on *Metheny v. State*, 359 Md. 576, 755 A.2d 1088 (2000), to support this position, and to support his general argument that a guilty plea entered without a factual basis is void. Mr. Rivera also takes issue with the Court of Special Appeals's conclusion that the factual basis underlying the prosecution does not always have to match the offense for which the guilty plea is taken. He contends that under *Metheny*, the factual basis must match the offense to which the defendant is pleading guilty or the plea cannot be considered knowing, intelligent and voluntary. Mr. Rivera asserts that this requirement is fundamental to preserve the integrity of the guilty plea process.

In addition, Mr. Rivera avers that he should have be granted coram nobis relief because his plea was not entered knowingly, intelligently and voluntarily. He asserts that the record from the coram nobis hearing "overwhelmingly established" that he, Ms. Herdman, and the plea judge all reasonably believed that Mr. Rivera would not be deported as a result of his guilty plea. Mr. Rivera asserts that the Court of Special Appeals erred in affirming the coram nobis court's decision that his guilty plea was entered knowingly and voluntary on the basis that "Rivera had to have appreciated that his counsel, the prosecutor, and the plea court could not control the decisions by ICE, an agency of the federal government." Finally, Mr. Rivera urges that an independent examination of the record reveals that his plea was involuntary because it triggered deportation proceedings, in contravention of his reasonable understanding of the plea agreement. According to Mr. Rivera, the State's communication with him regarding deportation amounted to an affirmative misrepresentation.

The State argues that the judgment of the Court of Special Appeals should be reversed in part and affirmed in part. First, the State asserts that the coram nobis court was correct in determining that it lacked jurisdiction to hear Mr. Rivera's petition. It contends that the Court of Special Appeals's conclusion to the contrary, was in error. The State argues that:

> [B]ecause the conviction which Rivera sought to challenge by his coram nobis action had been stricken in connection with the granting of probation before judgment, the coram nobis court correctly determined that there was no conviction before it in that matter and that it lacked jurisdiction under the expanded coram nobis remedy.

The State also asserts that the Court of Special Appeals's reliance on *Abrams,* 176 Md.App. 600, 933 A.2d 887, was misguided as *Abrams* is "at odds with the unequivocal language and intent of [Md.Code (2001) § 6–220 of the Criminal Procedure Article] and, in any event, has no application to Rivera's case."

Next, the State asserts that even if the coram nobis court did have jurisdiction, the judgment of that court should be affirmed because it correctly denied Mr. Rivera's motion for coram nobis relief on the basis that the record established that Mr. Rivera's guilty plea proceeding comported with the requirements of Maryland Rule 4–242, including providing a factual basis for the plea. Regarding the factual basis for the plea, the State contends that:

> It [was] entirely appropriate [for the intermediate appellate court] to consider the entire case, including the charges initiating the prosecution, when, as in Rivera's case, evaluating a guilty plea conviction that has "been bargained down from more serious charges...." Thus, the intermediate appellate court did not err in determining that Rivera understood the nature of the offense to which he was pleading guilty, particularly given that the offense had been extensively explored in the ongoing negotiations and was interrelated with the charges which were being eliminated by virtue of the plea deal.

Finally, the State argues that Mr. Rivera's guilty plea was made knowingly and voluntarily. The State asserts that it made no affirmative misrepresentations to Mr. Rivera and maintains that it never promised Mr. Rivera "immunity or insulation from deportation or immigration consequences in connection with his guilty plea." The State also points out that the attorney from the Department of Homeland Security that counsel consulted did not state categorically whether INS would look behind the charges against Mr. Rivera.

### III.

To begin, we provide a brief overview of the development of coram nobis law in Maryland. We then shall consider whether the coram nobis court had jurisdiction to review Mr. Rivera's plea, and finally, we shall determine whether under the circumstances, Mr. Rivera is entitled to coram nobis relief. In *Madison v. State*, 205 Md. 425, 432, 109 A.2d 96, 99 (1954), this Court explained that the writ of error coram nobis is an

ancient common law device traditionally utilized to correct errors of fact. The Court elaborated, stating that historically, "the purpose of the writ [was] to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment." *Id.; accord* Daniel F. Piar, *Using Coram Nobis to Attack Wrongful Convictions: A New Look at an Ancient Writ*, 30 N. KY. L. REV. 505, 505 (2003) ("Coram nobis is an ancient common-law writ that provides a means of collateral attack in criminal cases where some event outside the trial record has rendered a conviction fundamentally flawed."). Later, in *Ruby v. State*, we noted that "[w]hile at common law the writ of error coram nobis was issued out of chancery like other writs, the procedure by motion in the case is now the accepted American practice." 353 Md. 100, 110, 724 A.2d 673, 678 (1999) (quoting *U.S. v. Morgan*, 346 U.S. 502, 505 n. 4, 74 S.Ct. 247, 249 n. 4, 98 L.Ed. 248, 253 n. 4 (1954)).

In *Skok v. State*, 361 Md. 52, 75, 760 A.2d 647, 659 (2000), we embraced a broader interpretation of the scope and nature of a coram nobis proceeding. The *Skok* Court held that in contemporary times, coram nobis can be utilized to challenge errors of "constitutional or fundamental" nature, whether characterized as errors of fact or errors of law. 361 Md. at 78, 760 A.2d at 661; *see also* Piar, *supra*, at 519 ("The *Skok* Court extended *coram nobis* to ... 'errors of constitutional or fundamental proportion ... including the voluntariness of the plea, the minority or incapacity of a petitioner at the time of a plea, the withholding of exculpatory evidence by the state, the use of perjured evidence by the state, and other unspecified legal errors of constitutional significance.'") (quoting, in part, 3 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE CRIMINAL 2D § 592 at 429–32 (1982)). The Court reasoned:

Along with the vast majority of appellate courts which have considered the matter, we believe that the scope of coram nobis, as delineated in *United States v. Morgan*, [346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954)], is justified by

contemporary conditions of public policy. Very often in a criminal case, because of a relatively light sanction imposed or for some other reason, a defendant is willing to forego an appeal even if errors of a constitutional or fundamental nature may have occurred. Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and if the defendant is not incarcerated or on parole or probation, he or she will not be able to challenge the conviction by a petition for a writ of habeas corpus or a petition under the Post Conviction Procedure Act.

*Skok,* 361 Md. at 77, 760 A.2d at 660.[6]

██ The coram nobis court, in this case, determined that it did not have jurisdiction to hear Mr. Rivera's petition because Mr. Rivera's probation before judgment is not a conviction under Maryland law. We disagree with the coram nobis court and affirm the judgment of the Court of Special Appeals on this issue. As we stated in *Myers v. State,* 303

---

6. The expanded interpretation of the scope and function of the writ of error coram nobis is not without qualification. *Skok v. State,* 361 Md. 52, 78–80, 760 A.2d 647, 661–62 (2000). In *Skok,* the Court instructed that the following qualifications apply:

 1) The grounds for challenging the criminal conviction must be of a constitutional, jurisdictional or fundamental in character.

 2) A presumption of regularity attaches to the criminal case, and the burden of proof is on the coram nobis petitioner.

 3) The coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction.

 4) Basic principles of waiver are applicable to issues raised in coram nobis proceedings. Similarly, where an issue has been finally litigated in a prior proceeding, and there are no intervening changes in the applicable law or controlling case law, the issue may not be re-litigated in a coram nobis action. Therefore, the same body of law concerning waiver and final litigation of an issue which is applicable under the Maryland Post Conviction Procedure Act is applicable to a coram nobis proceeding challenging a criminal conviction.

 5) One is not entitled to challenge a criminal conviction by a coram nobis proceeding if another statutory or common law remedy is then available. Accordingly, the expanded coram nobis remedy to challenge a criminal conviction will ordinarily be available only to a person who, based on the conviction, is not incarcerated and not on parole or probation.

361 Md. at 78–81, 760 A.2d at 660–62.

Md. 639, 496 A.2d 312 (1985), "[i]n today's usage ... the meaning of 'convicted' and 'conviction' turns upon the context and purpose with which those terms are used." *Myers*, 303 Md. at 642, 496 A.2d at 313. Whether a probation before judgment qualifies as a conviction in the context of a coram nobis petition depends on the circumstances presented in the case.

In *Abrams*, Judge Woodward, writing for the intermediate appellate court, analyzed this issue as follows:

In the context of the coram nobis petition, the term "conviction" or "convicted" is used to identify a person eligible for relief under the petition as one who, *inter alia*, is facing significant collateral consequences because of having been found guilty of a criminal offense. It is essentially irrelevant whether the disposition on the guilty finding is a judgment of conviction, *i.e.*, a sentence, or a stay of entry of a judgment, *i.e.*, a probation before judgment. The critical issue is whether the finding of guilt did or will in fact cause significant collateral consequences to the person petitioning for coram nobis relief.

176 Md.App. at 616–17, 933 A.2d at 897; *cf. State v. Hannah*, 307 Md. 390, 401, 514 A.2d 16, 21 (1986) (noting the General Assembly's enactment of Chapter 964 of the Acts of 1978 "made plain that, although probation before judgment is not a final judgment or conviction for many purposes, from the standpoint of appealability it is a final judgment"). We believe that the above analysis accurately reflects Maryland law. In *Holmes*, the Court succinctly stated: "[T]he writ of error coram nobis is available not only to correct errors of fact that affect the validity or regularity of a judgment, but also to correct constitutional or fundamental legal errors for a petitioner who is not incarcerated and not on parole or probation and who is faced with serious collateral consequences of his conviction." 401 Md. at 452, 932 A.2d at 712 (citing *Skok*, 361 Md. at 75–78, 760 A.2d at 659–61). In *Skok*, we determined that deportation proceedings are a significant collateral conse-

quence of a criminal conviction. *Skok,* 361 Md. at 77, 760 A.2d at 660–61. ("[S]erious collateral consequences of criminal convictions have become much more frequent in recent years. . . . [B]ecause of recent changes in federal immigration laws, regulations, and administration, there has been a plethora of deportation proceedings against non-citizens based on relatively minor criminal convictions."). Accordingly, we agree with the Court of Special Appeals's conclusion that the deportation proceedings that Mr. Rivera faces are a significant collateral consequence of his probation before judgment. We hold that because of this significant collateral consequence, the entry of a probation before judgment in Mr. Rivera's case did not deny Mr. Rivera standing to file his petition for coram nobis relief.

Having established that Mr. Rivera had standing to petition for coram nobis relief, we turn now to the issue of whether the Court of Special Appeals determined correctly that Mr. Rivera was not entitled to that relief. We conclude that it did. We agree that the trial court complied with Maryland Rule 4–242(c) when accepting Mr. Rivera's plea and that Mr. Rivera entered the plea knowingly and voluntarily. Maryland Rule 4–242(c) provides:

> **Plea of guilty.** The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. In addition, before accepting the plea, the court shall comply with section (e) of this Rule. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

Section (e) of the Rule provides:

> **Collateral Consequences of a Plea of Guilty or Nolo Contendere.** Before the court accepts a plea of guilty or

nolo contendere, the court, the State's Attorney, the attorney for the defendant, or any combination thereof shall advise the defendant (1) that by entering the plea, if the defendant is not a United States citizen, the defendant may face additional consequences of deportation, detention or ineligibility for citizenship and (2) that the defendant should consult with defense counsel if the defendant is represented and needs additional information concerning the potential consequences of the plea. The omission of advice concerning the collateral consequences of a plea does not itself mandate that the plea be declared invalid.

The record reveals that the trial judge complied with Maryland Rule 4–242(c) and (e) when accepting Mr. Rivera's guilty plea. As detailed above, the trial judge made the inquiries required by Rule 4–242(c) to ensure that Mr. Rivera entered the plea voluntarily and with an understanding of the charges against him and the consequences of his plea. The trial judge also abided by Rule 4–242(e) by advising Mr. Rivera of the possibility that he might face immigration consequences, asking Mr. Rivera if he had consulted his attorney, and informing Mr. Rivera that he could ask either his attorney or the court if he had any additional questions.

 In addition, the record reveals that there was a sufficient factual basis for Mr. Rivera's plea. As we explained in *Metheny*, the primary purpose of the factual basis requirement of Maryland Rule 4–242(c) is to ensure that the accused is not convicted of a crime that he or she did not commit. 359 Md. at 602–03, 755 A.2d at 1103; *cf. State v. Thornton*, 73 Md.App. 247, 255, 533 A.2d 951, 955 (1987) (explaining that the factual basis requirement "protect[s] a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge")(citing *McCall v. State*, 9 Md.App. 191, 199, 263 A.2d 19, 25 (1970)). When determining if there is a factual basis for a plea, a trial court has "broad discretion as to the sources" it may consider. *Metheny*, 359 Md. at 601, 755 A.2d at 1103. The trial court may consider the statement of facts proffered by the State, as

the court did in this case. *See* Maryland Rule 4–242(c) ("The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof ..."); *see also U.S. v. DeFusco,* 949 F.2d 114, 120 (4th Cir.1991) (explaining that under Federal Rule 11, which Maryland Rule 4–242(c) closely parallels, "[t]he court may conclude that a factual basis exists from anything that appears on the record").

We do not read *Metheny* to stand in opposition to this conclusion. Here, the facts proffered by the State, as recited in Part I of this Opinion, provided a sufficient factual basis to support the conclusion that Mr. Rivera violated § 3–828 of the Courts and Judicial Proceedings Article. In particular, the State presented facts that indicate that Mr. Rivera engaged in anal intercourse with his daughter and "ended up on top" of his daughter while rubbing her back. Accordingly, we affirm the judgment of the Court of Special Appeals on this issue.

In conclusion, we address Mr. Rivera's contention that the State affirmatively misled him during the guilty plea negotiations. Mr. Rivera asserts that he relied on the State's assurances that he would not face immigration consequences when he pled guilty to the charges against him and asserts that he would not have pled guilty had he known that he would later face such consequences. The record does not support Mr. Rivera's contention. Although Ms. Herdman did write Mr. Rivera's counsel a letter which stated that she had spoken to a Special Agent from INS and that the agent informed Ms. Herdman that INS does not investigate contributing charges and that such charges do not make a defendant eligible for deportation proceedings, the record does not indicate that Ms. Herdman guaranteed Mr. Rivera that he would not face immigration consequences. While it does appear that at the time Mr. Rivera's plea was entered, the State and the trial judge did not expect the consequences that ultimately ensued, the record does not reflect that the State or the trial judge

made Mr. Rivera any assurances about the actions that ICE would or would not pursue in the future.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**

RAKER, Judge, dissenting, joined by BELL, Chief Judge:

Petitioner was misled by the statements made by the Assistant State's Attorney as to the collateral consequences of his guilty plea. The prosecutor's unequivocal statements were reasonably relied upon by petitioner in entering his guilty plea. Accordingly, petitioner should be granted coram nobis relief and permitted to withdraw his plea of guilty on the grounds that his guilty plea was not freely and voluntarily offered.[1] He relied upon an unequivocal and unambiguous representation of the State that his plea of guilty would not make him eligible for deportation. Although no representative of the State of Maryland can bind the federal government as to immigration matters, petitioner was not unreasonable in relying upon the State's Attorney's representation. As an inducement to plead guilty, in the absence of the fulfillment of that inducement, petitioner should be permitted to withdraw his guilty plea.

The majority concludes that the record does not indicate that the Assistant State's Attorney *guaranteed* that petitioner would not face immigration consequences. Maj. op at 195–96, 973 A.2d at 230. The majority misses the point. It is not that the State guaranteed that petitioner would not face immigration consequences or would not be deported. Immigration consequences were at the heart of petitioner's plea considerations. The State knew that. The plea judge knew that as well, as evidenced by the colloquy between the court and

---

1. While immigration consequences resulting from disposition of a guilty plea or criminal charge are collateral consequences, the Maryland Rules require a judge to inform a defendant that a guilty plea may result in immigration consequences. *See* Md. Rule § 4–242(e). When the State voluntarily informs a defendant of the consequences of a plea, the State should be accurate and not misleading.

petitioner.[2] Petitioner had received the following letter from the representative of the State of Maryland:

> "In previous conversations that we have had, there was a concern that a plea to this charge would make your client deportable. I have since had an opportunity to speak to Christine Carlson, Special Agent for the U.S. Department of Homeland Security, Immigration and Customs Enforcement, who has informed me that a Contributing charge *does not make a defendant eligible for deportation proceedings. It is a charge that INS does not "look behind" as they would with a second degree assault.* Please feel free to contact Ms. Carlson at 410–962–7449." (Emphasis added).

Petitioner reasonably relied upon the State's representation and inducement to plead guilty, and when the State's representation turned out to be inaccurate, petitioner should be permitted to withdraw his guilty plea.

While the State cannot implement its inducement, it nonetheless has an obligation to provide accurate information and, so long as petitioner had "reasonable grounds for assuming that the [plea] bargain would be consummated," the prosecutor's failure to deliver on her promise destroyed the voluntariness of petitioner's plea and entitles petitioner to relief. *See Smith v. State*, 375 Md. 365, 390, 825 A.2d 1055, 1070 (2003) (quoting *United States v. Frontero*, 452 F.2d 406, 411–12 (5th Cir.1971)). In circumstances analogous to the present case in that they involved a defendant's reliance upon misleading information provided by the prosecutor to reach a plea agreement, the United States Court of Appeals for the Fifth Circuit noted as follows:

---

2. The following colloquy transpired before the plea was accepted:
 "The Court: If you are not a citizen of the United States, a finding of guilty could have immigration consequences for you. Have you had a chance to discuss that issue with your attorney, if you have any concerns about that?
 Petitioner: Yes, I had the chance to discuss with my attorney.
 The Court: And this plea has been negotiated in light of those immigration consequences, am I right?
 Petitioner: Right, yes."

"Inherent in the 'plea bargaining' process is the possibility of a misunderstanding on the part of the participants as to possible consequences of a guilty plea. The defendant is often told by his attorney that a 'promise' of a certain sentence has been made in exchange for his plea of guilty when, in fact, *the 'promise' has come from one, such as the prosecutor, who is in no position to make promises concerning sentencing* or has been made by the trial judge in terms of 'probably', 'maybe', or 'I am inclined toward'. These 'promises' are occasionally communicated to defendants as firm deals. *When the defendant is induced to plead guilty on the basis of his misinterpretation of the 'promise', the plea may, in certain cases, be invalid because it was based on incomprehension or misinterpretation.*

\* \* \*

This scenario will sometimes end in a sentence which comports with the defendant's expectations or in, what the defendant feels is, a 'double-cross', when the trial judge exercises his discretion and pronounces a sentence more severe than the prosecutor 'promised' or the judge supposedly had committed himself to. When this occurs, the defendant *may* (and we emphasize 'may') have a claim of an invalid plea based on incomprehension, misinterpretation, or inducement. The defendant, however, must have reasonable grounds for assuming that the bargain would be consummated. He cannot, in the ordinary case, rely on the promise of the prosecutor who has no authority to make sentencing promises, or on the inaccurate representations of an overzealous attorney. There must be some basis in the record for an appellate court to find that a 'bargain' has been made which acted as an inducement and destroyed voluntariness."

*Frontero,* 452 F.2d at 411 (emphasis in first paragraph added).

In *State v. Chace,* 151 N.H. 310, 856 A.2d 1 (2004), the prosecutor provided inaccurate information in a letter he wrote to the defendant. In the letter, the prosecutor set out the penalties for the criminal offense at issue, driving while

intoxicated. On appeal, the defendant argued the letter was misleading because it failed to provide some discretionary sentencing options. The State argued that it had no obligation to inform the defendant about the particular sentencing procedure and that nothing prevented the defendant from consulting an attorney. Finding the letter misleading, the New Hampshire Supreme Court stated as follows:

"Here, the State voluntarily undertook the task of informing the defendant concerning the consequences of a plea. In doing so, the State has a responsibility to describe fairly and accurately such consequences. In this instance, we agree with the trial court that the letter written by the State failed to meet this burden."

*Id.* at 4. No less is expected of the State of Maryland.

In the instant case, petitioner's reliance on the State's promise was reasonable. His attorney was tenacious in pursuing the matter. Everyone knew deportation was an issue and of prime concern. Defense counsel received the information from the State in writing. The State led petitioner to believe that he would not face deportation if he pleaded guilty, based upon assurances of the United States Department of Homeland Security, Immigration and Customs Enforcement. Surely, under those circumstances, it was not unreasonable for petitioner to rely upon the word of the State. Although petitioner is not entitled to specific performance, he should be permitted to withdraw his guilty plea.

I would hold that because of the inducements offered by the State in this case, petitioner should be permitted to withdraw his plea. However, I would further hold that henceforth, attorneys are on notice that if a prosecutor makes representations about the ramifications of plea agreements on immigration matters, it should be clear that the State cannot bind the federal government and defendants cannot reasonably rely on such representations to enter into a plea agreement.

Chief Judge BELL has authorized me to state that he joins in the views expressed in this dissenting opinion.