# IN THE SUPREME COURT OF IOWA

No. 10–0413

Filed October 21, 2011

**DAVID SCOTT DAUGHENBAUGH,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

Appeal from the Iowa District Court for Clinton County, Paul L. Macek, Judge.

Applicant appeals district court judgment denying postconviction relief. **AFFIRMED.**

John J. Wolfe, Jr., Clinton, for appellant.

Thomas J. Miller, Attorney General, Benjamin M. Parrott and Sharon K. Hall, Assistant Attorney Generals, Michael L. Wolf, County Attorney, and Robin L. Strausser, Assistant County Attorney, for appellee.

**APPEL, Justice.**

In this case, we consider whether a person who pled guilty to criminal charges, received a deferred judgment, and had the charges dismissed after successful completion of probation has a conviction of a crime that can be challenged in a postconviction relief proceeding. The district court entertained the postconviction relief claim, but concluded that there was no basis to vacate the conviction. We agree with the result of the district court, but for different reasons as described below. We therefore affirm the judgment of the district court.

### I. Factual and Procedural Background.

David Daughenbaugh worked as a part-time pharmacist at the Camanche Pharmacy. Police arrested him on a warrant for theft in April 2008. As a result of an inventory search of his vehicle after his arrest, police discovered fifty-seven prescription bottles containing various prescription drugs. Daughenbaugh told the arresting officer that he was a "pharmacist tech" and intended to destroy the pills. His employer, however, told police that Daughenbaugh had no permission to take the medication from the pharmacy.

Daughenbaugh was subsequently charged with three felony counts of violating Iowa Code sections 155A.23(1)(*a*) and 124.401(1)(*c*)(8) (2007); one aggravated misdemeanor in violation of Iowa Code sections 155A.23(1)(*a*) and 124.401(1)(*d*); and one serious misdemeanor of unlawful possession of a prescription drug.

Daughenbaugh and the State entered into a plea agreement. The plea agreement provided that Daughenbaugh would plead guilty to the three felony counts and the aggravated misdemeanor count in exchange for the State's promise not to oppose Daughenbaugh's request for a

deferred judgment. The State also agreed to drop the misdemeanor count.

The district court held a plea hearing on August 21, 2008. During the plea colloquy, Daughenbaugh admitted that he obtained the drugs—Ritalin, Vicodin, Lortab, and Lonox—by fraud, deceit, and misrepresentation. He further explained that he took the drugs in order to self-medicate himself for a bad back.

The district court found a factual basis to support the guilty pleas and accepted them. During a subsequent sentencing hearing in October 2008, the court granted Daughenbaugh's request for a deferred judgment, placed him on supervised probation for two years, and imposed civil penalties. As a condition of probation, Daughenbaugh was required to undergo therapy, continue taking his prescription medication, and submit to random drug testing.

After his guilty plea and deferred judgment, Daughenbaugh received a letter from the Department of Health and Human Services (DHS) dated June 16, 2009. The DHS letter notified Daughenbaugh that he was excluded "from eligibility to participate in any capacity in the Medicare, Medicaid, and **all** Federal health care programs" as a result of his felony "convictions." The practical impact of the letter was that Daughenbaugh was virtually unemployable as a pharmacist.

Daughenbaugh then filed an application for postconviction relief. In his postconviction relief papers, he alleged that his trial counsel provided ineffective assistance of counsel under both the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution. Daughenbaugh claimed that there was no factual basis to support his acknowledgement at the plea colloquy that he obtained the prescription pills by "fraud, deceit, misrepresentation, or

subterfuge." *See* Iowa Code § 155A.23(1)(*a*). He claimed that the trial information and minutes of testimony only supported charges of theft. Daughenbaugh filed a motion for summary judgment. The State resisted and filed its own motion for summary judgment.

The State asserted that Daughenbaugh had not been "convicted" for purposes of postconviction relief under Iowa Code chapter 822. The State relied on *Galloway v. State,* No. 08–0652, 2008 WL 4571556 (Iowa Ct. App. Oct. 15, 2008), an unpublished court of appeals opinion. The State also argued that there was a factual basis to support Daughenbaugh's guilty pleas. The State claimed that theft, by itself, constituted "deceit" under the applicable statutes. Further, the State argued that there was factual support on a "subterfuge" theory as Daughenbaugh knew which drugs were frequently inventoried by the pharmacy and took drugs that were not subject to such review. Finally, the State contended that untruthful statements made by Daughenbaugh after the officers discovered the prescription pills demonstrated fraud or deceit.

The district court held that Daughenbaugh was entitled to file a claim for postconviction relief. The court rejected the approach of *Galloway* and instead adopted the framework of *Schilling v. Iowa Department of Transportation,* 646 N.W.2d 69 (Iowa 2002), in determining that Daughenbaugh's guilty pleas amounted to "convictions" even though he received a deferred judgment. On the merits of his claim, however, the district court determined that there was a substantial factual basis for his guilty pleas and that, as a result, counsel was not ineffective. The district court concluded that theft involves "deceit, misrepresentation, and subterfuge." Further, the district court found that because Daughenbaugh was an employee of the pharmacy, his theft of drugs

amounted to embezzlement which was deceitful because he did not tell his employer that he was taking the drugs. The district court further found that Daughenbaugh engaged in misrepresentation because he took drugs knowing there would not be inventories over a certain time period, and therefore, he "misrepresented" the true nature of the employer's inventory.

## II. Standard of Review.

Postconviction relief proceedings are actions at law and are generally reviewable on error. *Osborn v. State*, 573 N.W.2d 917, 920 (Iowa 1998). Claims of ineffective assistance of counsel, however, are reviewable de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

## III. Overview of Issues Presented.

**A. The Growth of Collateral Consequences.** In recent years, there has been a striking growth of what is generally termed "collateral consequences" that flow from a criminal conviction. Federal law now imposes dozens of sanctions for persons with felony drug convictions. *See generally* ABA Comm'n on Effective Crim. Sanctions & Pub. Defender Serv. for D.C., *Internal Exile: Collateral Consequences of Conviction in Federal Laws and Regulations* (2009), *available at* http://www.abanet.org/cecs/internalexile.pdf (discussing federal statutory and regulatory collateral consequences of a criminal conviction). States have also imposed an increasing number of sanctions as a result of criminal convictions. *See, e.g.*, Kimberly R. Mossoney & Cara A. Roecker, *Ohio Collateral Consequences Project: Executive Summary*, 36 U. Tol. L. Rev. 611, 620 (2005) (describing Ohio statutory and regulatory collateral consequences of a criminal conviction). In Iowa, for example, a person who is convicted of sexual offenses will be subject to registration laws and other restrictions that apply to sex offenders,

Iowa Code section 692A.103(1) (2011), and a deferred judgment for eluding a law enforcement vehicle may have an impact on one's driver's license, *Schilling*, 646 N.W.2d at 73.

The growth of collateral consequences and their potential impact on criminal defendants has gained considerable national attention. The ABA Standards for Criminal Justice and the Uniform Collateral Consequences Conviction Act approved by the National Conference of Commissioners on Uniform Laws provide for the collection and publication of information regarding collateral consequences, require that criminal defendants be advised of collateral consequences in pretrial proceedings, require individualized determinations of disqualification in certain circumstances, and provide avenues of relief from collateral consequences arising from criminal convictions. *See* ABA Standards for Criminal Justice, *Collateral Sanctions and Discretionary Disqualification of Convicted Persons* Standard 19-2.1 to .5, -3.2 (3d ed. 2004); Unif. Collateral Consequences of Conviction Act §§ 4–10, 11 U.L.A. 6, 15–29 (Supp. 2011).

Recent developments in the law of the right to effective counsel have recognized the need for lawyers representing criminal defendants to advise their clients of the direct collateral consequences of a plea bargain. In *Padilla v. Kentucky*, ___ U.S. ___, ___, 130 S. Ct. 1473, 1486–87, 176 L. Ed. 2d 284, 298–99 (2010), the United States Supreme Court held that a criminal defendant pleading guilty to drug offenses received ineffective assistance of counsel when his lawyer failed to advise him of an important collateral consequence—deportation—that would automatically occur because of his conviction of drug offenses.

This case is a classic example of the impact collateral consequences may have on criminal proceedings. Daughenbaugh pled

guilty to serious drug offenses believing he would likely receive a deferred judgment upon certain conditions. After receiving a deferred judgment, Daughenbaugh was notified by federal authorities that because his guilty pleas amounted to convictions under federal law, he could no longer participate as a pharmacist in federal drug programs, a death knell for licensed pharmacists. He now seeks to unravel the criminal proceedings to avoid the serious collateral consequences.

**B. Challenge to "Conviction" in This Case.** In Iowa, there are two separate avenues for challenging illegal restraint by government. The first avenue is entitled habeas corpus and is found in Iowa Code chapter 663. The second avenue is entitled postconviction relief and is found in Iowa Code chapter 822.

In this case, Daughenbaugh brought a claim for posttrial relief under Iowa Code chapter 822. In order to be entitled to relief under chapter 822, a petitioner must show that he was "convicted of, or sentenced for, a public offense." Iowa Code § 822.2(1). In addition, Iowa Code section 822.4 provides that the applicant must allege "the date of the entry of the judgment of conviction or sentence complained of." *Id.* § 822.4.

**IV. Whether Daughenbaugh Is Entitled to Relief Under Iowa Code Chapter 822.**

**A. Federal Precedent.** The question of what constitutes a "judgment of a State court" has been addressed in cases considering the impact of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which amended federal habeas corpus statutes. Pub. L. No. 104–132, Title I, §§ 101, 106, 110 Stat. 1217, 1220 (codified as amended in scattered sections of 28 U.S.C.). The AEDPA provided, among other things, that a person who files an application for habeas corpus

"pursuant to the judgment of a State court" must file the application within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A) (2006).

After the enactment of AEDPA, the question arose whether, in the context of deferred judgments, the one-year statute of limitations began to run at the time of a deferred judgment or only when a deferred judgment was revoked and a sentence imposed on the defendant. The Fifth Circuit considered the issue in *Caldwell v. Dretke*, 429 F.3d 521 (5th Cir. 2005). In *Caldwell,* the Fifth Circuit concluded that a "deferred adjudication" in a Texas criminal proceeding was a "judgment" sufficient to trigger the one-year statute of limitations under the AEDPA. *Caldwell,* 429 F.3d at 527–28.

The *Caldwell* court emphasized that the question of whether a deferred adjudication in Texas was a "judgment" for federal habeas corpus purposes was a question of federal law. *Id.* at 527. Although the court noted that a deferred adjudication is not a judgment under Texas law, the court concluded that it was a "judgment" under the Federal Rules of Civil Procedure, which define "judgment" as including "a decree and any order from which an appeal lies." *Id.* at 527–28; *see* Fed. R. Civ. P. 54(a). Because Texas law allowed a direct appeal from a deferred adjudication, the Fifth Circuit reasoned that a "judgment" for AEDPA purposes was present. *Id.* at 528–29.

The United States Supreme Court denied certiorari in *Caldwell. Caldwell v. Quarterman,* 549 U.S. 970, 127 S. Ct. 431, 166 L. Ed. 2d 301 (2006). In denying certiorari, however, Justice Stevens issued a statement noting that, under a literal reading of the statute, a deferred judgment cannot be considered a "judgment of a State court" because it

does not involve a determination of guilt or innocence and the imposition of a sentence. *Id.* at 970, 127 S. Ct. at 432, 166 L. Ed. 2d at 301. Justice Stevens concluded, however, that if a court determines that a nonliteral reading of a statute is more faithful to the actual intent of the Congress, that reading should normally be preferred. *Id.*

Subsequent to *Caldwell*, the United States Supreme Court decided *Burton v. Stewart*, 549 U.S. 147, 127 S. Ct. 793, 166 L. Ed. 2d 628 (2007). According to the *Burton* Court, "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Burton*, 549 U.S. at 156, 127 S. Ct. at 798, 166 L. Ed. 2d at 636 (internal quotation marks omitted). The language of *Burton*, however, has not caused the Fifth Circuit to reconsider its approach in *Caldwell*. *See Tharpe v. Thaler*, 628 F.3d 719, 724–25 (5th Cir. 2010).

**B. Other State Law Precedent.** While nearly all states have adopted some kind of postconviction relief procedure, the statutes vary significantly in their language. Some states, perhaps anticipating the problem posed in this case, provide that any person who pleads guilty to a criminal offense may seek postconviction relief. *See, e.g.*, Ariz. R. Crim. P. 32.1 (West, Westlaw through July 15, 2011), Fla. R. Crim. P. 3.850(a) (West, Westlaw through June 1, 2011). In these states, postconviction relief appears available to a defendant who pleads guilty regardless of whether there is a formal adjudication of guilt in the technical legal sense.

Most state postconviction relief statutes use broader language, however, with many of them referring generally to "convictions." In a few of these jurisdictions, courts have grappled with the question of whether a plea of guilty when judgment is deferred amounts to a "conviction" under a postconviction relief statute.

In Colorado, the court of appeals considered the issue in *People v. Manzanares*, 85 P.3d 604 (Colo. App. 2003). In *Manzanares*, the court cited the language in Colorado's postconviction relief statute and the applicable rule of criminal procedure in coming to the conclusion that postconviction relief was not available for persons with deferred judgments. *Manzanares*, 85 P.3d at 611. Although the court provided no analysis of the language, the applicable postconviction relief statute and rule of criminal procedure referred in places to "conviction of crime," but in other places referred to "judgment of conviction" and "the court rendering judgment." *See* Colo. Rev. Stat. Ann. § 18-1-410(1) (West, Westlaw through 68th Gen. Assembly, 1st Reg. Sess.); Colo. R. Crim. P. 35(c)(2)–(3) (West, Westlaw through Aug. 15, 2011); *see also State v. Young*, 242 S.W.3d 926, 928–29 (Tex. Ct. App. 2008) (holding a person who receives a deferred adjudication is not "convicted" for purposes of a Texas postconviction relief statute authorizing DNA tests as the term "convicted" under Texas caselaw always involves adjudication of guilt).

The Minnesota appellate courts have struggled with the issue under Minnesota law which provides for postconviction relief for "a person convicted of a crime." Minn. Stat. Ann. § 590.01(1) (West, Westlaw through 2011 Reg. Sess.). In *Smith v. State*, 615 N.W.2d 849, 852 (Minn. Ct. App. 2000), the Minnesota Court of Appeals concluded that a person who received a "stay of adjudication" was not "convicted of a crime" under the statute. The court supported its conclusion by citing statutory language relating to deferred judgments, which declared that a deferred judgment "shall not be deemed a conviction . . . for any other purpose." *Smith*, 615 N.W.2d at 851–52 (quoting Minn. Stat. Ann. § 152.18(1) (1998)). The court also cited *State v. Verschelde*, 595 N.W.2d 192, 196 (Minn. 1999), for the proposition that stays of adjudication were

not subject to direct appeal. *Id.* at 851. The court concluded that a different approach should not be employed for collateral attack. *Id.* at 852. The court recognized that there might be collateral consequences to a deferred judgment, but concluded that if a defendant has concerns about such potential consequences, a defendant should decline to accept a deferred judgment. *Id.*

Yet, the Minnesota Court of Appeals reversed course in the unreported case of *Jones v. State*, No. A07-1633, 2008 WL 3289618 (Minn. Ct. App. Aug. 12, 2008). The *Jones* court relied on *State v. Allinder*, 746 N.W.2d 923 (Minn. Ct. App. 2008), which held that, in light of orders from the Minnesota Supreme Court, direct appeal of stays of adjudication in felony cases were to be allowed. *Jones*, 2008 WL 3289618, at *2. The court noted that the court in *Smith* stated that "[t]here is no basis for treating a stay of adjudication differently for purposes of postconviction relief" than a direct appeal. *Id.* (internal quotation marks omitted). As a result of the concept equating direct appeal with postconviction relief, the *Jones* court concluded, because the Minnesota Supreme Court had by order instructed that stays of adjudication could be appealed directly, a stay of adjudication could also be challenged in a postconviction relief proceeding. *Id.* at **2–3.

The Maryland appellate courts have also taken on the issue of whether an avenue of postconviction relief is available when the defendant receives a deferred judgment and is subject to serious collateral consequences. In *Rivera v. State*, 973 A.2d 218, 229 (Md. 2009), the Court of Appeals of Maryland held a person receiving probation before judgment could seek collateral relief through a writ of error coram nobis. Citing Maryland precedent, the court stated, "In today's usage . . . the meaning of 'convicted' and 'conviction' turns upon

the context and purpose with which those terms are used." *Rivera*, 973 A.2d at 228 (internal quotation marks omitted). In the context of a coram nobis petition, the Maryland court concluded that the term "convicted" or "conviction" is used to identify persons who face "significant collateral consequences because of having been found guilty of a criminal offense." *Id.* (internal quotation marks omitted). The Maryland cases were based upon the availability of the common law writ of coram nobis, however, and not upon interpretation of a postconviction relief statute.

We next turn to consider how states that, like Iowa, have adopted the Uniform Post-Conviction Procedure Act handle issues similar to those posed in this case. *See, e.g.,* Alaska Stat. Ann. § 12.72.010 (West, Westlaw through Sept. 8, 2011 of 1st Reg. Sess. & 1st Special Sess. of the 27th Legislature); Idaho Code Ann. § 19-4901 (West, Westlaw through 2011 chs. 1–335); Ind. R. of Procedure for Post-Conviction Remedies PC-1(a) (West, Westlaw through July 15, 2011). The Uniform Post-Conviction Procedure Act was originally approved in 1955. It was superseded by new versions in 1966 and 1980. Unlike the common law writ of habeas corpus, the Uniform Act is not limited to persons "in custody" but is available to anyone "convicted of and sentenced for" a crime. *See* Unif. Post-Conviction Procedure Act § 1 & cmt. (amended 1980), 11 U.L.A. 201, 203–04 (2003).

The Uniform Act, however, does not provide definitions for the term "convicted of" a public offense. In this respect, the Uniform Act is unlike the Model Code of Criminal Procedure, which broadly defines "conviction" as meaning "the final acceptance of a plea of guilty or the finding by the jury or by the court that the defendant is guilty." Model Code of Criminal Procedure § 360 (1930).

We have found no meaningful caselaw in the Uniform Act on the question of whether the term "convicted of" is used in its technical legal sense or its general popular sense. One court has suggested that for purposes of the Uniform Act, the meaning of "convicted" follows the definition of "convict" in Webster's New World Dictionary, namely, "to prove a person guilty of a crime." *Jackson v. State*, 489 S.E.2d 915, 916 (S.C. 1997) (internal quotation marks omitted). But this formulation merely restates the question: Does a plea of guilty that is accepted by a court as part of a deferred judgment "prove a person guilty of a crime"?

**C. Iowa Caselaw.** We begin our discussion of Iowa law by examining our approach to statutory interpretation of the term "conviction." Like many other jurisdictions, we have emphasized that "conviction" has an "equivocal meaning" that depends upon the context in which it is used. *State v. Hanna*, 179 N.W.2d 503, 507 (Iowa 1970). Like many other states, we have said that, when the word is used in its general and popular sense, conviction means the establishment of guilt independent of judgment and sentence. *Id.* at 508. On the other hand, when the term "conviction" is used in its technical legal sense, it requires a formal adjudication by the court and the formal entry of a judgment of conviction. *Id.* at 507–08. In *Hanna*, we held that, under beer and liquor statutes, the term "conviction" was used in its general rather than technical sense. *Id.* at 508.

Five years after *Hanna*, we decided *State v. Farmer*, 234 N.W.2d 89 (Iowa 1975). In *Farmer*, the defendant received a deferred judgment after pleading guilty to false uttering of a check. *Farmer*, 234 N.W.2d at 90. Several months later, the court revoked the defendant's probation and sentenced the defendant to an indeterminate prison term. *Id.* Among other things, the defendant claimed the court erred in failing to

adjudicate him guilty before proceeding to sentence him. *Id.* On the narrow issue presented, we unremarkably held that an adjudication of guilt must be made prior to the imposition of the criminal sentence after the revocation of probation. *Id.* at 92.

In *Farmer*, we noted, in passing, that an adjudication of guilt does not occur when the defendant receives a deferred judgment. *Id.* Nonetheless, we held that, although the district court judge did not expressly adjudicate guilt, an adjudication of guilt could be implied from the sentence itself. *Id.* *Farmer* thus does not address the issue before us today, namely, whether a person is "convicted of" a public offense for purposes of postconviction relief when the person pleads guilty and receives a deferred judgment.

After *Farmer*, however, we continued to vary our interpretation of the term "conviction" depending upon the statutory context. Generally, if statutes were designed to enhance punishment, the word "conviction" was deemed to be used in its narrow technical sense, but in its broader sense when the purpose of the statute was to protect the public. *State v. Kluesner*, 389 N.W.2d 370, 372 (Iowa 1986).

Our purposive approach is illustrated by *Kluesner*. In *Kluesner*, we held that the term "conviction" in a mandatory restitution statute was used in its broader sense rather than its technical legal sense. *Id.* at 372–73. We noted that the court had "encountered difficulty" with the legislature's use of the term "conviction." *Id.* at 372. In determining whether the term "conviction" should be construed in its general, popular sense or in its strict legal sense, we looked primarily to the underlying purpose of the statute. *Id.* Because the purposes of the statute were protection of the public and encouraging rehabilitation of the defendant,

we concluded that the legislature intended the term "conviction" to be construed in its general, popular sense. *Id.* at 372–73.

Most recently, in *Schilling* we considered the meaning of the term "conviction" in the context of a statute authorizing the revocation of a driver's license upon a "final conviction" of eluding a law enforcement vehicle. *Schilling*, 646 N.W.2d at 70. In *Schilling*, we repeated the principle that if the statute was a punishment measure, the court would use the term "conviction" in its narrow, technical sense, but if the statute served a protective purpose, a broad definition would be applicable. *Id.* at 73.

Finally, we have considered whether a deferred judgment amounts to a "final judgment" for purposes of direct appeal. In *State v. Stessman*, 460 N.W.2d 461, 462–63 (Iowa 1990), we held that a person who received a deferred judgment, was placed on probation, and was ordered to pay restitution and court costs, has no right of direct appeal because there is no final judgment in the district court. We reasoned that, under Iowa Code section 814.6(1)(*a*), a person has a right to appeal in instances where a "final judgment of sentence" exists. *Id.* at 462. Because an order deferring judgment is interlocutory, *State v. Anderson*, 246 N.W.2d 277, 279 (Iowa 1976), we concluded that a deferred judgment did not meet the final judgment requirement of the statute. *Stessman*, 460 N.W.2d at 462.

**D. Analysis.** The question under Iowa Code chapter 822 turns on the meaning of the phrase "convicted of" a public offense in Iowa Code section 822.2. Resolution of the issue turns on whether we regard the term "convicted of" as used in "the restricted or technical legal sense" or whether it is used in its "general and popular sense." *Hanna*, 179 N.W.2d at 507–08.

We conclude that a "deferred judgment" is used in its strict legal sense in our postconviction relief statute, and as a result, a guilty plea pursuant to a deferred judgment is not a conviction under Iowa's postconviction relief statute. A postconviction statute by its very nature is a legal framework for structuring challenges in the courts to the outcomes of our criminal justice system. In the context of a statute that is designed to structure legal relationships in the court system, we believe the legislature most likely used the term in its "strict legal sense" and not in its broader popular context.

Our conclusion draws support from the language of Iowa Code section 822.4, which requires an applicant for postconviction relief to state the "date of the entry of the judgment . . . complained of." Iowa Code § 822.4. The ambiguous use of the term "conviction" in Iowa Code section 822.2 must be read *in pari materia* with the pleading requirements of Iowa Code section 822.4. *See State v. Tong*, 805 N.W.2d 599, 601–02 (Iowa 2011) (analyzing statutory context in determining whether a deferred judgment is a conviction for purposes of felon-in-possession offense); *State v. Nail*, 743 N.W.2d 535, 541 (Iowa 2007). Reading these statutory provisions together, we conclude that, since an applicant must state "the date of the entry of the judgment . . . complained of," there must be an entry of a judgment of conviction. In other words, the statute uses the term "conviction" in its technical sense, namely, to require adjudication and the entry of judgment. *See Farmer*, 234 N.W.2d at 92.

While some jurisdictions treat deferred judgments as convictions under postconviction relief statutes, we find the cases in those jurisdictions distinguishable. Under the federal and Minnesota precedents, deferred judgments were found subject to postconviction

relief because they were subject to direct appeal. *See Caldwell*, 429 F.3d at 528; *Jones*, 2008 WL 3289618, at *2. In Iowa, however, deferred judgments are not subject to direct appeal. *Stessman*, 460 N.W.2d at 462; *Anderson*, 246 N.W.2d at 279. In Maryland, the court relied on a common law remedy, not on a postconviction relief statute. *See Rivera*, 973 A.2d at 228. As a result, we do not find that these authorities override our analysis that the term "conviction" in the Iowa postconviction statute must be based upon an underlying criminal judgment.

## V.  Conclusion.

For the above reasons, we conclude that Daughenbaugh is not entitled to postconviction relief.[1]  The judgment of the district court is therefore affirmed.

**AFFIRMED.**

All justices concur except Wiggins, J., who concurs specially.

---

[1]We express no opinion upon whether or under what circumstances a guilty plea followed by a deferred judgment might be subject to collateral attack under Iowa Code chapter 663.

**WIGGINS, Justice (concurring specially).**

I concur in result only because I am bound by stare decisis. *See State v. Tong*, 805 N.W.2d 599, 604 (Iowa 2011) (Wiggins, J., concurring).