# IN THE SUPREME COURT OF IOWA

No. 13–0917

Filed May 22, 2015

**STATE OF IOWA,**

Appellee,

vs.

**VICTOR HERNANDEZ-GALARZA,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Odell McGhee, Judge.

Petitioner appeals the denial of his petition for writ of habeas corpus. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Benjamin D. Bergmann of Parrish Kruidenier Dunn Boles Gribble & Gentry LLP, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kevin R. Cmelik and Alexandra Link, Assistant Attorneys General, John P. Sarcone, County Attorney, and Kevin D. Hathaway, Assistant County Attorney, for appellee.

**ZAGER, Justice.**

Victor Hernandez-Galarza appeals the denial of his petition for writ of habeas corpus. He maintains he received ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution due to counsel's failure to adequately inform him of adverse immigration consequences resulting from his guilty plea to the charge of fraudulent practice in the fourth degree. *See* Iowa Code § 714.12 (2011). He asserts that at the time he entered his guilty plea he was "subject to a U.S. Immigration and Customs Enforcement [(ICE)] detainer," he is now "subject to deportation proceedings," and because of his guilty plea he is "ineligible for cancelation of removal" proceedings under federal immigration law. He claims that absent counsel's deficient advice, he would not have pled guilty to the charge of fraudulent practice in the fourth degree.

The district court summarily denied Hernandez-Galarza's habeas petition. Hernandez-Galarza appealed, and we transferred the case to the court of appeals. The court of appeals affirmed the district court judgment. Hernandez-Galarza applied for further review, which we granted. For the reasons set forth below, we conclude the district court properly denied the petition for writ of habeas corpus. We affirm the decision of the court of appeals and the judgment of the district court.

## I. Background Facts and Proceedings.

On August 2, 2011, Hernandez-Galarza approached Polk County Investigator Don Sharr. Hernandez-Galarza informed Investigator Sharr he was "willing to turn himself into the Department of Transportation for using a false social security number to title vehicles in Iowa." Upon further investigation, Investigator Sharr discovered Hernandez-Galarza had used a false social security number to apply for certificates of title

for three separate vehicles. However, because of his "willingness to surrender," Investigator Sharr agreed to charge Hernandez-Galarza with only one count of fraudulent practice in the third degree in violation of Iowa Code section 714.11(3) and one count of fraudulent applications in violation of Iowa Code section 321.97. Thereafter, Hernandez-Galarza signed a written statement admitting that "[o]n or about July 26, 2010, . . . [he] used a false social security number to apply . . . for [a] certificate of title for a motor vehicle."

On August 10, 2011, law enforcement filed a preliminary complaint charging Hernandez-Galarza with one count of fraudulent practice in the third degree and one count of fraudulent applications for "falsely us[ing] a social security number not assigned to [him] to make a false application for an [I]owa certificate of title." The State filed a trial information charging Hernandez-Galarza with one count of fraudulent applications. *See* Iowa Code § 321.97. The State later orally amended the trial information to charge Hernandez-Galarza with one count of fraudulent practice in the third degree. *See id.* § 714.11(3).

On October 21, Hernandez-Galarza entered a written guilty plea to the reduced charge of fraudulent practice in the fourth degree in violation of Iowa Code section 714.12. Contained within the written guilty plea was the following bolded paragraph: "I understand that if I am not a citizen of the United States that a criminal conviction or deferred judgment may result in deportation or other adverse immigration consequences under federal immigration laws." Both Hernandez-Galarza and his attorney signed and acknowledged this written guilty plea. In its sentencing order, the district court granted Hernandez-Galarza a deferred judgment. It also placed him on probation for a period of one year, supervised by the Iowa Department of Corrections (DOC).

On February 14, 2012, the district court entered a probation discharge order. The district court ordered that the "defendant is hereby discharged from probation" and "the Court's criminal records with reference to the [defendant's] deferred judgment shall be expunged."

On March 12, 2013, Hernandez-Galarza filed the subject "Petition for Writ of Habeas Corpus, or in the alternative, Petition for Writ of Coram Nobis" in district court. In the petition, he alleged he received ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution. This claim is based on counsel's alleged failure to adequately inform him of adverse immigration consequences resulting from his guilty plea to the charge of fraudulent practice in the fourth degree and the corresponding deferred judgment. Specifically, Hernandez-Galarza maintained that at the time he entered his guilty plea he was "subject to a[n] . . . [ICE] detainer," he is now "subject to deportation proceedings," and because of his guilty plea he is "ineligible for cancelation of removal" proceedings under federal immigration law as he no longer qualifies for the petty-offense exception codified at 8 U.S.C. § 1182(a)(2)(A)(ii)(II) (2012).[1] Hernandez-Galarza claims that absent counsel's deficient advice, he would not have pled guilty to the charge of fraudulent practice in the fourth degree.

With respect to his habeas petition, Hernandez-Galarza pled the following facts:

    a. The application for the writ of habeas corpus is filed on behalf of Victor Hernandez Galarza.

---

[1]There is no evidence in the record that Hernandez-Galarza is subject to an order of detention or that he is currently the subject of removal proceedings. In his petition, he makes reference to a detention order, a notice to appear, and an ICE bond.

b. Mr. Hernandez is collaterally subject to the restraint of the consequences of the outcome of Polk County Case . . . captioned State of Iowa v. Victor Hernandez Galarza. The outcome in this case was a result of ineffective assistance of counsel by trial counsel, specifically by trial counsel's failure to adequately advise Mr. Hernandez of the immigration consequences of his guilty plea, as required by Padilla.[2]

c. The consequences of the guilty plea are in violation of Mr. Hernandez's United States Constitutional Rights under Amendments 5, 6 and 14, and article one, section ten of the Iowa Constitution, due to ineffective assistance of counsel.

d. No court or tribunal has previously adjudicated the issue of ineffective assistance of counsel in any proceeding.

e. No application for writ of habeas corpus has been previously made or refused by any court.

On May 8, the district court summarily denied the petition for writ of habeas corpus.[3] The district court explained,

> This Court finds that A Petition for Habeas Corpus is concerned with "unlawful detention," that is detention lacking sufficient cause or evidence. . . . This Court can find no evidence of arbitrary state action and further can find no evidence of illegal detention. Also, Section 822.1 . . . [of] the Code provides that Habeas Corpus does not apply to a person who has been sentenced for a public offense. Therefore, Habeas Corpus relief is DENIED.

Hernandez-Galarza appealed, and we transferred the case to the court of appeals. The court of appeals determined the habeas petition failed to comply with the pleading requirements of Iowa Code section 663.1(1) by failing to specify how, where, or by whom Hernandez-Galarza was detained. The court of appeals also noted that Hernandez-Galarza was no longer arguably in the custody of the State of Iowa because any

---

[2]*Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

[3]On appeal, Hernandez-Galarza does not challenge the district court's denial of his petition for writ of *coram nobis*. Thus, we do not consider it as part of this appeal.

alleged sentence had expired. Accordingly, he could no longer challenge his state deferred judgment by a writ of habeas corpus.

Hernandez-Galarza applied for further review, which we granted.

## II. Standard of Review.

Habeas corpus proceedings are actions at law and are generally reviewable for corrections of errors at law. *See* Iowa R. App. P. 6.907; *Cummings v. Lainson*, 239 Iowa 1193, 1196, 33 N.W.2d 395, 397 (1948) ("The writ of habeas corpus does not invoke the court's equitable powers and the appeal is not de novo . . . ."). However, we review claims of ineffective assistance of counsel de novo. *Daughenbaugh v. State*, 805 N.W.2d 591, 593 (Iowa 2011).

## III. Overview of Issue Presented.

**A. Collateral Consequences.** There has recently been an increase in what is typically referred to as "collateral consequences" that flow from a criminal conviction. *Id.* As we recently explained,

> Federal law now imposes dozens of sanctions for persons with felony drug convictions. States have also imposed an increasing number of sanctions as a result of criminal convictions. In Iowa, for example, a person who is convicted of sexual offenses will be subject to registration laws and other restrictions that apply to sex offenders, and a deferred judgment for eluding a law enforcement vehicle may have an impact on one's driver's license.

*Id.* (citations omitted).

Further, recent developments in the law regarding a defendant's right to effective assistance of counsel recognize that lawyers representing criminal defendants must advise their clients whether their pleas carry a risk of deportation. *See Padilla v. Kentucky*, 559 U.S. 356, 374–75, 130 S. Ct. 1473, 1486, 176 L. Ed. 2d 284, 298–99 (2010). In *Padilla*, the Supreme Court of the United States held that a criminal defendant who pled guilty to drug charges received constitutionally

deficient assistance of counsel when his lawyer failed to advise him of a serious consequence—deportation—that would automatically occur because of his conviction. *Id.* at 359, 373–75, 130 S. Ct. at 1478, 1486–87, 176 L. Ed. 2d at 290, 298–99.

This case presents a clear example of the impact collateral consequences may have on criminal proceedings. Hernandez-Galarza pled guilty to the charge of fraudulent practice in the fourth degree believing he would receive a deferred judgment, and that upon satisfying his one-year term of probation and other conditions, the court would expunge any record of his conviction. Hernandez-Galarza now alleges that after receiving a deferred judgment he became ineligible for cancellation of removal proceedings under federal immigration law because he no longer qualifies for the petty-offense exception. *See* 8 U.S.C. § 1182(a)(2)(A)(ii)(II). As such, he asserts he is subject to removal from the United States. *See id.* § 1182(a)(2). He seeks to attack his state criminal proceedings to avoid these claimed consequences.

**B. Avenues for Relief.** In Iowa, there are three avenues for challenging a criminal conviction: direct appeal, *see* Iowa Code § 814.6(1)(*a*); postconviction relief, *see id.* ch. 822; and habeas corpus, *see id.* ch. 663. Because he received a deferred judgment, Hernandez-Galarza could not challenge his conviction on direct appeal. *See State v. Stessman*, 460 N.W.2d 461, 462 (Iowa 1990) (holding a deferred judgment is interlocutory and cannot meet the final judgment requirement for appeals). Neither could he bring a postconviction relief action under Iowa Code chapter 822. *See Daughenbaugh*, 805 N.W.2d at 598 (holding a deferred judgment is not a "conviction" under Iowa's postconviction relief statute). Thus, we must determine whether habeas corpus relief under Iowa Code chapter 663 is a cognizable avenue for

Hernandez-Galarza to challenge his deferred judgment based on ineffective assistance of counsel.

**IV. Whether Hernandez-Galarza Is Entitled to Relief Under Iowa Code Chapter 663.**

As noted by the court of appeals, Hernandez-Galarza seizes on a footnote in our *Daughenbaugh* opinion to support his use of habeas corpus to attack his deferred judgment. *See id.* at 599 n.1. There, we stated: "We express no opinion upon whether or under what circumstances a guilty plea followed by a deferred judgment might be subject to collateral attack under Iowa Code chapter 663." *Id.* We must now address one possible circumstance. We begin our analysis by setting forth a brief history of the writ of habeas corpus. Next, we will discuss federal precedent and other state law decisions that have dealt with comparable issues in this context. Finally, we consider whether Hernandez-Galarza is entitled to relief under Iowa Code chapter 663.

**A. History of the Writ of Habeas Corpus.** Commonly referred to as the "Great Writ," *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S. Ct. 373, 377, 9 L. Ed. 2d 285, 291, (1963), the remedy of habeas corpus is derived from the common law of England, *see Ex parte Holman*, 28 Iowa 88, 125 (1869) (Beck, J., in chambers). It was originally "a writ of right, to which every person [was] entitled, . . . inherent in the English people." *Holman*, 28 Iowa at 125. Its chief purpose was to "seek the release of persons [unlawfully] held in actual, physical custody in prison or jail." *Jones*, 371 U.S. at 238, 83 S. Ct. at 375, 9 L. Ed. 2d at 288. The remedy was subsequently transferred to the United States as part of the common law. *See Holman*, 28 Iowa at 125–26. It is now recognized by both the United States Constitution and the Iowa Constitution. U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be

suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."); Iowa Const. art. I, § 13 ("The writ of habeas corpus shall not be suspended, or refused when application is made as required by law, unless in case of rebellion, or invasion the public safety may require it.").

Although the writ originally provided an avenue of relief for prisoners to challenge their actual, physical confinement, it has since been extended to include challenges during the time a person is released on bail or parole. *See Hensley v. Mun. Ct.*, 411 U.S. 345, 351–53, 93 S. Ct. 1571, 1575–76, 36 L. Ed. 2d 294, 300–01 (1973) (bail); *Jones*, 371 U.S. at 242–43, 83 S. Ct. at 377, 9 L. Ed. 2d at 290–91 (parole). It also "include[s] an inquiry into the proper custody of minor children." *Lamar v. Zimmerman*, 169 N.W.2d 819, 821 (Iowa 1969). Historically, the writ provided a postconviction remedy after the time for appeal had passed, allowing an individual to obtain an evidentiary hearing and a determination of any alleged denial of constitutional rights. *Birk v. Bennett*, 258 Iowa 1016, 1023, 141 N.W.2d 576, 580 (1966). However, habeas corpus is not an avenue to determine the guilt or innocence of an individual, pass upon errors at trial, or challenge the sufficiency of the evidence. *Scalf v. Bennett*, 260 Iowa 393, 398, 147 N.W.2d 860, 863 (1967). Rather, the question is whether the trial court lacked jurisdiction to enter judgment. *Id.* Constitutionally ineffective assistance of counsel constitutes a jurisdictional defect and is reviewable by habeas corpus. *Id.* at 398, 147 N.W.2d at 864.

However, in 1970 the Iowa legislature, by statute, limited the circumstances in which an individual may use habeas corpus to challenge a conviction. *See* 1970 Iowa Acts ch. 1276, § 1 (codified at Iowa Code § 663A.1 (1971) and now found at Iowa Code § 822.1 (2011)).

Today, Iowa Code section 822.1 provides: "The provisions of sections 663.1 through 663.44, inclusive, shall not apply to persons convicted of, or sentenced for, a public offense." Thus, pursuant to Iowa Code section 822.1, the legislature foreclosed habeas corpus as a postconviction remedy for persons "convicted of, or sentenced for, a public offense." *See Allen v. State*, 217 N.W.2d 528, 531 (Iowa 1974) (noting that Iowa Code section 663A.1, now section 822.1, "seems to abrogate habeas corpus for persons convicted of, or sentenced for, a public offense"), *overruled on other grounds by Davis v. State*, 345 N.W.2d 97, 99 (Iowa 1984). The postconviction procedure contained in Iowa Code chapter 822 now provides the proper remedial vehicle for persons "convicted of, or sentenced for, a public offense" to challenge their convictions. Iowa Code § 822.2. Here, however, because Hernandez-Galarza received a deferred judgment, he has not been "convicted of, or sentenced for, a public offense." *Id.*; *see Daughenbaugh*, 805 N.W.2d at 598. Thus, insofar as Iowa Code section 822.1 is concerned, Iowa Code section 663 might be available to Hernandez-Galarza.

**B. Federal Precedent.** The federal habeas statute gives the United States district courts jurisdiction to entertain habeas petitions from persons who are "*in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (emphasis added); *see also id.* §§ 2255(a), 2254(a). Under federal law, actual physical detention is not required. *See Jones*, 371 U.S. at 240, 83 S. Ct. at 376, 9 L. Ed. 2d at 289. Rather, a person is deemed to be in "constructive custody" even when he or she is released on parole, *id.* at 242–43, 83 S. Ct. at 377, 9 L. Ed. 2d at 290–91; released on bail or on his or her own recognizance, *Hensley*, 411 U.S. at 351–53, 93 S. Ct. at 1575–76, 36 L. Ed. 2d at 300–01; or unconditionally released before

completion of proceedings on his or her habeas petition, *Carafas v. LaVallee*, 391 U.S. 234, 237–38, 88 S. Ct. 1556, 1559–60, 20 L. Ed. 2d 554, 558–59 (1968). This constructive custody concept is predicated on the notion that such restrictions, although falling short of immediate physical imprisonment, significantly restrain an individual's liberty in ways not shared by the public generally so as to fall within the historical ambit of the writ's availability. *See Jones*, 371 U.S. at 240, 83 S. Ct. at 376, 9 L. Ed. 2d at 289 ("History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.").

Notwithstanding, a habeas petitioner is not in custody for purposes of filing a federal habeas petition once the sentence imposed for a conviction has fully expired. *Maleng v. Cook*, 490 U.S. 488, 492, 109 S. Ct. 1923, 1926, 104 L. Ed. 2d 540, 546 (1989) (per curiam). Instead, the petitioner must be in custody pursuant to the judgment or sentence he or she seeks to attack at the time the petition is filed. *Id.* at 492, 109 S. Ct. at 1926, 104 L. Ed. 2d at 545. In imposing this requirement, the United States Supreme Court reasoned that while it has liberally construed the in-custody requirement, it has "never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction." *Id.* at 492, 109 S. Ct. at 1926, 104 L. Ed. 2d at 545–46. Further, because adverse collateral consequences accompany many criminal convictions, a contrary holding would allow a petitioner whose sentence has fully expired to "challenge the conviction for which it was imposed at any time on federal habeas." *Id.* at 492, 109 S. Ct. at 1926,

104 L. Ed. 2d at 546. "This would read the 'in custody' requirement out of the statute . . . ." *Id.*

However, if the petitioner files a habeas petition while the sentence imposed for a conviction he or she seeks to attack still restrains his or her liberty, the sentence subsequently expires, and he or she is discharged while his petition is still pending, the collateral consequences of the conviction may prevent the case from being moot. *See Carafas*, 391 U.S. at 237–39, 88 S. Ct. at 1559–60, 20 L. Ed. 2d at 558–59. In the federal context, the case or controversy requirement of Article III, Section 2, of the United States Constitution means that the petitioner, throughout the litigation, " 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 983, 140 L. Ed. 2d 43, 49–50 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 1253, 108 L. Ed. 2d 400, 410 (1990)). Collateral consequences previously deemed sufficient to avoid dismissal on mootness grounds include one's inability to vote, engage in certain businesses, or serve as a juror. *See Carafas*, 391 U.S. at 237, 88 S. Ct. at 1559, 20 L. Ed. 2d at 558. However, "the collateral consequences of [a] conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng*, 490 U.S. at 492, 109 S. Ct. at 1926, 104 L. Ed. 2d at 545.

In applying the foregoing principles, the United States Court of Appeals for the Ninth Circuit held the immigration consequences stemming from a state conviction did not render the defendant in custody for federal habeas purposes when the petitioner filed his habeas

petition after his prison sentence and period of probation had expired.[4] *Resendiz v. Kovensky*, 416 F.3d 952, 955, 958 (9th Cir. 2005). In so holding, the Ninth Circuit reasoned that immigration consequences resulting from a state conviction are collateral to the underlying conviction, in that they "arise from the action of an . . . independent *sovereign* . . . and are consequences over which the state trial judge has no control whatsoever." *Id.* at 957. Thus, because the petitioner filed his habeas petition after his state sentence had fully expired, the Ninth Circuit concluded the federal courts did not have jurisdiction to entertain the petition. *Id.* at 958.

When a habeas petition is filed prior to the expiration of the sentence, however, the federal courts have suggested a different result. For example, in *Perez v. Greiner*, 296 F.3d 123, 124–25 & n.3 (2d Cir. 2002), the petitioner filed a habeas petition challenging his New York State conviction for second-degree robbery prior to the expiration of the sentence on the conviction. After filing the petition, "[t]he [Immigration and Naturalization Service (INS)] issued a warrant of removal/deportation against [him]." *Id.* at 125. The basis for the warrant was the petitioner's prior illegal entry into the United States. *Id.*

---

[4]Every other federal circuit court of appeals to address this issue has concluded similarly. *See, e.g.*, *Llovera-Linares v. Florida*, 559 F. App'x 949, 951–52 (11th Cir. 2014) (per curiam) (holding defendant was not in custody for federal habeas purposes when the sentence on his state conviction had expired before he filed his federal habeas petition, despite the fact that he was later detained by immigration authorities because of the conviction); *Ogunwomoju v. United States*, 512 F.3d 69, 74 (2d Cir. 2008) (same); *Broomes v. Ashcroft*, 358 F.3d 1251, 1254–55 (10th Cir. 2004) (same), *abrogated on other grounds by Padilla*, 559 U.S. at 365 & n.9, 374, 130 S. Ct. at 1481 & n.9, 1486, 176 L. Ed. 2d at 293 & n.9, 299; *cf., e.g.*, *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004) (holding defendant was not in custody for federal habeas purposes when the sentence on his federal conviction had expired before he filed his federal habeas petition, despite the fact that he was later detained by immigration authorities because of the conviction); *Kandiel v. United States*, 964 F.2d 794, 796 (8th Cir. 1992) (per curiam) (same).

In addressing whether the petition was moot, the United States Court of Appeals for the Second Circuit noted,

> In the absence of any other impediment, [the petitioner] could return to the United States after that ten-year period. If, instead, the present conviction for robbery in the second degree stands, [he] will be barred from ever reentering the United States without permission of the United States Attorney General. Such a barrier to reentry clearly would suffice to prevent [his] habeas petition from being mooted.

*Id.* at 126 (footnote omitted) (citation omitted).[5] Nevertheless, the Second Circuit concluded the case was moot because "[the petitioner] ha[d] also been convicted for Attempted Criminal Sale of a Controlled Substance in the Third Degree," which independently "render[ed] him permanently inadmissible to the United States." *Id.* Thus, "[b]ecause [he was] permanently barred from this country on a wholly separate ground, the . . . challenged robbery conviction [could] have no meaningful effect on his admissibility and hence [could not] serve as a possible collateral consequence." *Id.*

**C. State Law Precedent.** Other states have addressed whether the immigration consequences flowing from a state conviction are themselves sufficient to sustain a habeas challenge. In *People v. Villa*, 202 P.3d 427, 429 (Cal. 2009), the petitioner asserted a state conviction resulted in the institution of removal proceedings by federal immigration authorities. The Supreme Court of California affirmed the dismissal of the habeas petition when the petitioner challenged the state conviction after the sentence had fully expired. *Id.* At the time, California's habeas statute provided: " 'Every person unlawfully *imprisoned* or *restrained* of

---

[5]*See also Steele v. Blackman*, 236 F.3d 130, 135 n.4 (3d Cir. 2001) ("Erroneous conviction of an aggravated felony will have several continuing and serious legal consequences for [petitioner], including serving as a permanent bar preventing his return to the United States to visit his family.").

his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint.'" *Id.* at 430 (emphasis added) (quoting Cal. Penal Code § 1473(a)). The California Supreme Court interpreted the language "imprisoned or restrained" as imposing a custody requirement, such that a "prerequisite to gaining relief on habeas corpus is a petitioner's custody." *Id.* However, as under federal law, actual physical detention is not required, and California has expanded the instances in which a person may bring a habeas claim to persons released on bail or their own recognizance, probation, and parole. *Id.* at 431. Further, as under federal law, "collateral consequences of a criminal conviction . . . do not of themselves constitute constructive custody." *Id.*

Applying these principles, the *Villa* Court concluded that because the petitioner had completed the sentence on his underlying state conviction prior to filing his habeas petition, he was no longer in the custody of the State of California. *Id.* at 433. In concluding the collateral consequences of his expired state conviction did not constitute constructive custody, the court noted

> [t]hat the INS, a completely different governmental entity, chose to resurrect that old conviction and use it to form the basis of a new and collateral consequence for [petitioner], while undoubtedly unfortunate for him and his family, does not—without more—convert his detention by federal immigration authorities . . . into some late-blossoming form of custody for which the State of California is responsible.

*Id.*

Finally, it noted,

> The critical factor in determining whether a petitioner is in actual or constructive state custody, then, is not necessarily the name of the governmental entity signing the paycheck of the custodial officer in charge, or even whether the petitioner is within the geographic boundaries of the

State of California. Instead, courts should realistically examine the nature of a petitioner's custody to determine whether it is currently authorized in some way by the State of California. . . . [The petitioner] is not subject to a detainer hold placed by California state officials. Nor is his detention . . . either a part of the sentence (probation) . . . imposed for his 1989 crime or otherwise authorized by state law. Instead, his detention is directly traceable to applicable federal laws governing immigration and to the discretion of federal immigration officials and, presumably, that of the United States Attorney General. Under such circumstances, [he] cannot be considered to be in custody for state habeas corpus purposes.

*Id.* at 434 (citations omitted).

The Supreme Court of Illinois has reached a similar result in a slightly different context. *See People v. Carrera*, 940 N.E.2d 1111, 1120 (Ill. 2010). In *Carrera*, federal immigration authorities instituted removal proceedings against the petitioner based on his guilty plea to a drug offense under Illinois law. *Id. at* 1112. Immigration authorities instituted the removal proceedings after the petitioner had fully completed his probation on the drug offense. *Id.* at 1113. The petitioner challenged his guilty plea under Illinois's postconviction statute. *Id.* The state moved to dismiss, alleging the petitioner was not a " 'person *imprisoned in the penitentiary*' " as required under the Act. *Id.* (emphasis added) (quoting 725 Ill. Comp. Stat. Ann. 5/122-1(a) (West 2006)). Similar to federal law, the Illinois Supreme Court has held the statutory phrase "imprisoned in the penitentiary" precludes "those who ha[ve] completed their sentences from using the Act's remedial machinery solely to purge their criminal records" for lack of standing. *Id.* at 1114.

Ultimately, the Illinois Supreme Court held the petitioner did not have standing to challenge his state law conviction because he had fully served his sentence prior to the filing of his petition. *Id.* at 1122. In so holding, it noted, "[T]he state has nothing to do with defendant's

deportation, and has no control over the actions of the INS." *Id.* at 1120. Further, it rejected the petitioner's contention that such a result left him without a remedy altogether. *Id.* at 1121. It noted that the

> defendant has a remedy to challenge his conviction, so long as the challenge is made while defendant is serving the sentence imposed on that conviction. While sympathetic to defendant's plight, this court cannot expand the remedy set forth in the Act in order to bring defendant's case within the reach of the Act.

*Id.*

Applying a framework similar to the federal habeas framework, the Court of Appeals of Kansas reached a different result in a factually similar case. *See Rawlins v. State,* 182 P.3d 1271, 1274, 1277 (Kan. Ct. App. 2008). In *Rawlins,* the petitioner was subject to deportation based on her conviction for battery under Kansas law. *Id.* at 1277. The petitioner subsequently brought a claim under a Kansas statute that "gives prisoners a right to collaterally attack their sentences" and which was "modeled after [the] federal habeas corpus statute." *Id.* at 1275. The petitioner filed her petition while still on probation for the underlying offense. *Id.* at 1274. Thereafter, she was discharged from probation and the district court dismissed her petition for lack of jurisdiction. *Id.* In reversing the district court's dismissal, the Kansas court of appeals began with the premise that, like the federal habeas statute, the Kansas statute imposes a custody requirement. *Id.* at 1275. The court then concluded that because the petition was filed prior to the petitioner's completion of her probation, the court initially had jurisdiction over the claim. *Id.* at 1277.

It then turned to the issue of whether the completion of her probation rendered the case moot. *Id.* In concluding the petitioner's completion of her probation did not render the case moot, the court

reasoned that several of the adverse collateral consequences she faced as a result of her conviction were sufficient to prevent her petition from becoming moot. *Id.* at 1277–78. It identified the following collateral consequences: possible deportation, inability to attain citizenship, inability to vote, inability to serve on a jury, and inability to hold public office. *Id.* at 1277.[6]

In contrast, the Supreme Court of Georgia has rejected the notion that a petitioner's habeas challenge is procedurally barred once the sentence imposed on a conviction completely expires.[7] *See Parris v.*

---

[6]Other jurisdictions have also adopted a framework similar to the federal habeas framework, such that the petitioner must be in custody pursuant to the judgment or sentence he or she seeks to attack at the time the petition is filed. *See, e.g.*, *Richardson v. Comm'r of Corr.*, 6 A.3d 52, 57–58 (Conn. 2010) ("We reject the petitioner's assertion that the custody requirement . . . may be satisfied by confinement alone and we reaffirm that a petitioner [must] be in *custody on the conviction under attack* at the time the habeas petition is filed . . . ." (alteration and omission in original) (internal quotation marks omitted)); *Hickman v. State*, 153 S.W.3d 16, 23 (Tenn. 2004) ("Accordingly, we hold that a person is not 'restrained of liberty' for purposes of the habeas corpus statute unless the challenged judgment itself imposes a restraint upon the petitioner's freedom of action or movement." (quoting Tenn. Code Ann. § 29-21-101 (2000)); *E.C. v. Va. Dep't of Juvenile Justice*, 722 S.E.2d 827, 834 (Va. 2012) ("The predicate to establish habeas corpus jurisdiction remains; the petitioner must have been detained at the time the petition is filed and the petition must be filed within a discrete time period."); *May v. People*, 2005 Guam 17 ¶ 12 (2005) ("As the *Maleng* court held, we also hold, that once the sentence imposed for [a] conviction completely expire[s], the collateral consequence[s] [are not themselves] sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it.").

[7]The Supreme Court of Vermont has also arguably held the collateral consequences stemming from a conviction may be sufficient to sustain a collateral attack on the conviction, despite a statutory in-custody requirement, even when the conviction itself no longer imposes a direct restraint on the petitioner. *In re Smith*, 144 Vt. 494, 496, 479 A.2d 152, 153 (1984) (finding no jurisdiction when petitioner moved for relief after completing kidnapping sentence and "failed to allege or demonstrate any collateral consequence stemming from that sentence"). However, it has more recently suggested that it would follow federal precedent in analyzing the propriety of such claims. *See In re Chandler*, 67 A.3d 261, 265 (2013) ("Our approach accords with that adopted by the U.S. Supreme Court in considering the related federal habeas statutes."). These cases are distinguishable, however, because they involve a conviction and the actual imposition of a sentence. Neither a conviction nor a sentence is present with this deferred judgment.

*State*, 208 S.E.2d 493, 496 (Ga. 1974). The Georgia Supreme Court concluded, "The mere fact that the state sentence has been completely served [is not] a bar to attacking it through habeas corpus even though the petition is not initially filed until after the sentence is completed." *Parris*, 208 S.E.2d at 496; *accord Capote v. Ray*, 577 S.E.2d 755, 760 (Ga. 2002) ("In interpreting this provision, we have clearly held that one's liberty may be restrained by a prior, expired conviction used to enhance a current sentence . . . ."), *overruled on other grounds by Crosson v. Conway*, 728 S.E.2d 617, 620 (Ga. 2012). For example, in *Tharpe v. Head*, 533 S.E.2d 368, 368–69 (Ga. 2000), the Georgia Supreme Court held a person could file a habeas petition to challenge a prior conviction for which the sentence had fully expired when the prior conviction was used to sway a jury to impose the death penalty in a penalty-phase proceeding in a later murder trial. In so concluding, the court reasoned that the use of the prior conviction to sway the jury to impose a death sentence constituted sufficient adverse collateral consequences to avoid mootness concerns and justify a habeas attack, despite the fact the petitioner's sentence on the underlying conviction had fully expired. *Id.* at 369–70.

**D. Analysis Under Iowa Habeas Corpus.** We turn now to determine whether Hernandez-Galarza is entitled to relief under Iowa Code chapter 663. We begin by considering whether he has sufficiently met the pleading requirements of Iowa Code section 663.1. Next, we consider whether there are sufficient facts to sustain a writ of habeas corpus.

First, in filing a petition for a writ of habeas corpus, a petitioner must comply with the requirements of Iowa Code section 663.1. *See Farrant v. Bennett*, 255 Iowa 704, 708, 123 N.W.2d 888, 891 (1963)

("[C]ompliance with the requirement[s] of the statute is mandatory."). "The statute squarely places that task upon the applicant." *Id.* Failure to comply with the requirements of this section is grounds for dismissal. *Id.*; *accord Ashby v. Haugh*, 260 Iowa 1047, 1050, 152 N.W.2d 228, 230 (1967) ("We have held the requirements of section 663.1 . . . are mandatory and failure of compliance is ground for dismissal . . . .").

Iowa Code section 663.1 provides:

> The petition for the writ of habeas corpus must state:
>
> 1. That the person in whose behalf it is sought is restrained of the person's liberty, and the person by whom and the place where the person is so restrained, mentioning the names of the parties, if known, and if unknown describing them with as much particularity as practicable.
>
> 2. The cause or pretense of such restraint, according to the best information of the applicant; and if by virtue of any legal process, a copy thereof must be annexed, or a satisfactory reason given for its absence.
>
> 3. That the restraint is illegal, and wherein.
>
> 4. That the legality of the restraint has not already been adjudged upon a prior proceeding of the same character, to the best knowledge and belief of the applicant.
>
> 5. Whether application for the writ has been before made to and refused by any court or judge, and if so, a copy of the petition in that case must be attached, with the reasons for the refusal, or satisfactory reasons given for the failure to do so.

In this case, Hernandez-Galarza has failed to comply with Iowa Code section 663.1 in several respects. First, he failed to state "the person by whom and the place where" he is currently restrained. Iowa Code § 663.1(1). His application merely states, "The application for the writ of habeas corpus is filed on behalf of Victor Hernandez Galarza." It does not state by whom or where he is restrained as required by the statute. *See id.* Most critically, Hernandez-Galarza does not claim he is

illegally restrained by the State of Iowa. Second, he failed to attach a copy of the legal process currently causing the alleged unlawful restraint, or give any reason why it is not attached. *See id.* § 663.1(2). He has stated what he believes to be the cause of the restraint, namely his guilty plea to fraudulent practices in the fourth degree. However, he did not attach a copy of any documents that are allegedly causing the restraint. As noted earlier, the record is devoid of any documentation to support the allegation that Hernandez-Galarza is subject to a detainer by or involved in removal proceedings with ICE. Hernandez-Galarza's failure to comply with these pleading requirements are alone grounds for dismissal of the action.

Hernandez-Galarza has also failed to allege sufficient facts to sustain a writ of habeas corpus. Iowa Code chapter 663 establishes requirements that must be followed by the court after the petition is filed. First, if the petitioner satisfies the pleading requirements of Iowa Code section 663.1, the court is instructed to issue a writ. *Id.* § 663.9. The court is to direct the writ to the party responsible for the "unlawful[] detain[ment]," namely the defendant. *Id.* § 663.8. Second, the writ is to be served on the defendant by the sheriff or another qualified person. *Id.* § 663.13. However, "if the defendant has not the plaintiff in custody, the service may be made upon any person who has, in the same manner and with the same effect as though the person had been made defendant therein." *Id.* § 663.15. Third, if service is properly effectuated, the defendant must answer the petition and appear for any scheduled hearings. *Id.* § 663.27. Additionally, "[t]he defendant must . . . produce the body of the plaintiff, or show good cause for not doing so." *Id.* § 663.28. Finally, "[i]f no sufficient legal cause of confinement is shown, the plaintiff must be discharged." *Id.* § 663.37.

Here, even if the district court were to issue a writ of habeas corpus, it could not properly direct the writ to the party responsible for the "unlawful[] detain[ment]" as required by Iowa Code section 663.8. Assuming a federal custodian, as pled, it is questionable whether Hernandez-Galarza is currently detained by federal immigration authorities in any way. *See Flowers v. Haugh*, 207 N.W.2d 766, 767 (Iowa 1973) (noting that the purpose of habeas corpus is to "cause one alleged to be unlawfully restrained to be expeditiously brought before the court so the legality of restraint can be judicially examined," such that "[t]he defendant named is not necessarily an adversary seeking to uphold the restraint; he is a person who can produce the plaintiff in court"). Hernandez-Galarza asserts that at the time he entered his guilty plea he was "subject to a[n] . . . [ICE] detainer," he is now "subject to deportation proceedings," and because of his guilty plea he is "ineligible for cancelation of removal" proceedings under federal immigration law. However, an ICE detainer does not cause an individual to come into the custody of ICE. It is simply a request that another law enforcement agency hold an individual so ICE may assume custody of him or her at a future point in time. *See* 8 C.F.R. § 287.7(a) (2014) ("The detainer is a request that such agency advise the Department [of Homeland Security], prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible."). More importantly, because Hernandez-Galarza failed to attach a copy of the requisite legal process noted above, we cannot determine whether Hernandez-Galarza is currently detained by federal authorities. Consequently, a writ of habeas corpus could not properly be directed to the party responsible for the "unlawful[] detain[ment]" as required by Iowa Code section 663.8.

Further, compliance with other sections of the statute is not possible. Pursuant to Iowa Code section 663.15, service is to be made on a defendant who "has . . . the plaintiff *in custody*." (Emphasis added.) The State of Iowa, as the only defendant, does not have custody or constructive custody of Hernandez-Galarza in this case. Pursuant to Iowa Code section 663.28, "[t]he defendant must . . . *produce the body of the plaintiff*, or show good cause for not doing so." (Emphasis added.) Hernandez-Galarza is in no way being restrained by the State of Iowa, it cannot produce the body, and it likely has no interest in the location of Hernandez-Galarza. Finally, the ultimate remedy sought is discharge from *confinement. See id.* § 663.37. The State of Iowa simply does not have the ability to discharge Hernandez-Galarza from any confinement.

Federal precedent and precedent from other jurisdictions do not assist Hernandez-Galarza. Under any analysis of constructive custody, the State of Iowa is not detaining Hernandez-Galarza. As noted above, a writ of habeas corpus must be addressed to the party responsible for the "unlawful[] detain[ment]." *Id.* § 663.8. The district court entered its probation discharge order for Hernandez-Galarza on February 14, 2012. At the time he filed his petition on March 12, 2013, Hernandez-Galarza was no longer detained by or in constructive custody of the State of Iowa. *See id.* § 663.8. Instead, prior to filing his petition, Hernandez-Galarza was "discharged from probation" and "the Court's criminal records with reference to the [his] deferred judgment [were] expunged." There is nothing in the record to support a conclusion that the State of Iowa has Hernandez-Galarza in constructive custody. Hernandez-Galarza is simply no longer restrained by the State of Iowa.

We recognize that the alleged restraint on Hernandez-Galarza may be factually traceable to his state criminal proceedings. However, even

this connection cannot be factually determined based on the record before us. Moreover, this alleged restraint is entirely the product of *federal* immigration policy. *See State v. Ramirez*, 636 N.W.2d 740, 744 (Iowa 2001) ("[D]eportation does not have an effect on the range of defendant's punishment as far as the State of Iowa is concerned, because it is not the sentence of the court which accepts the plea but of another agency over which the trial judge has no control and for which he has no responsibility." (Internal quotation marks omitted.)), *abrogated on other grounds as recognized by Chaidez v. United States*, 568 U.S. ___, ___ n.8, 133 S. Ct. 1103, 1109 n.8, 185 L. Ed. 2d 149, 158 n.8 (2013); *accord Resendiz*, 416 F.3d at 957; *Villa*, 202 P.3d at 434; *Carrera*, 940 N.E.2d at 1120.

We cannot conclude the collateral consequences of Hernandez-Galarza's state criminal proceedings are sufficient to demonstrate the State of Iowa is somehow currently detaining, has custody of, or has possession of the body of Hernandez-Galarza. *See Maleng*, 490 U.S. at 492, 109 S. Ct. at 1926, 104 L. Ed. 2d at 545; *Villa*, 202 P.3d at 433; *Richardson v. Comm'r of Corr.*, 6 A.3d 52, 57–58 (Conn. 2010) ("We reject the petitioner's assertion that the custody requirement . . . may be satisfied by confinement alone and we reaffirm that a petitioner [must] be in *custody on the conviction under attack* at the time the habeas petition is filed . . . ." (Alteration and omission in original.) (Internal quotation marks omitted.)); *Rawlins*, 182 P.3d at 1277–78 (holding court had jurisdiction when petitioner filed habeas petition prior to the expiration of parole period); *Hickman v. State*, 153 S.W.3d 16, 23 (Tenn. 2004) ("Accordingly, we hold that a person is not 'restrained of liberty' for purposes of the habeas corpus statute unless the challenged judgment itself imposes a restraint upon the petitioner's freedom of action or

movement.”); *E.C. v. Va. Dep't of Juvenile Justice*, 722 S.E.2d 827, 834 (Va. 2012) (“The predicate to establish habeas corpus jurisdiction remains; the petitioner must have been detained at the time the petition is filed and the petition must be filed within a discrete time period.”); *May v. People*, 2005 Guam 17 ¶ 12 (2005) (“As the *Maleng* court held, we also hold, that once the sentence imposed for [a] conviction completely expire[s], the collateral consequence[s] [are not themselves] sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it.”). Thus, because the probationary period entered against Hernandez-Galarza in this case had completely expired by the time he sought to challenge the outcome of his criminal proceedings, he does not have a cognizable habeas claim.[8]

We are not unsympathetic to Hernandez-Galarza. However, habeas corpus is not an avenue by which an individual may collaterally attack the outcome of a state criminal proceeding as an end in and of itself. *See Wright v. Bennett*, 257 Iowa 61, 63, 131 N.W.2d 455, 456 (1964) (“The writ is available only where the release of the prisoner will follow as a result of a decision in his favor.” (Internal quotation marks omitted.)). Instead, habeas corpus is a means by which an individual may challenge the outcome of a state criminal proceeding that currently

---

[8]Because it is not dispositive, we express no opinion as to whether or under what circumstances an individual could successfully attack a deferred judgment through a writ of habeas corpus more generally. Further, we express no opinion as to whether or under what circumstances adverse immigration consequences stemming from a state conviction would be sufficient to avoid dismissal on mootness grounds, assuming the State were responsible for some form of constructive detainment at the time a habeas petition was filed. *See In re B.B.*, 826 N.W.2d 425, 428–30 (Iowa 2013) (holding adverse collateral consequences were sufficient to avoid mootness concerns when individual who had been involuntarily committed was discharged from court ordered treatment by the time the appeal reached us, because involuntary commitment results in social stigma and could be used as evidence in future proceedings).

imposes a restraint on his or her liberty. *See Shirts v. State*, 259 Iowa 726, 727, 145 N.W.2d 465, 465 (1966) ("Habeas corpus is a summary remedy available to a person who is illegally restrained. Since plaintiff is no longer restrained, the question is moot and the appeal is dismissed . . . ." (Citation omitted.)). Hernandez-Galarza's liberty is no longer restrained by the State of Iowa based on his deferred judgment. The collateral consequences of his plea are not alone sufficient to sustain a writ of habeas corpus.

## V. Conclusion.

We conclude Hernandez-Galarza is not entitled to relief under Iowa Code chapter 663. He has failed to comply with the pleading requirements of Iowa Code section 663.1. Further, there are insufficient facts to sustain a writ of habeas corpus. At the time he filed his petition, the State of Iowa was not a cognizable defendant because Hernandez-Galarza was no longer subject to any restraint as a result of his state deferred judgment.

We recognize that in *Daughenbaugh* we left open the possibility that there may be circumstances in which an individual could collaterally attack a state criminal proceeding resulting in a deferred judgment through a state writ of habeas corpus. *See* 805 N.W.2d at 599 n.1. For the reasons stated above, this case does not present such a circumstance. We affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**