# IN THE COURT OF APPEALS OF IOWA

No. 16-0378
Filed March 8, 2017

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**ALI ABDELKARIM ALI,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Johnson County, Sean W. McPartland (guilty plea) and Ian K. Thornhill (sentencing), Judges.


       A defendant appeals his burglary conviction, contending he was prejudiced by faulty advice from counsel about the immigration consequences of his guilty plea. **CONVICTION AND SENTENCE VACATED; CASE REMANDED WITH DIRECTIONS.**


       John J. Bishop, Cedar Rapids, for appellant.

       Thomas J. Miller, Attorney General, and Jean C. Pettinger, Assistant Attorney General, for appellee.


       Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Syrian-born Ali Abdelkarim Ali appeals his conviction for burglary in the second degree, contending his attorney misinformed him regarding the adverse immigration consequences of pleading guilty and his plea was driven by a false hope that a deferred judgment offered a chance to avoid removal from the United States. Because the State does not dispute Ali received misinformation, we consider only whether he suffered prejudice. Finding "a decision to reject the plea bargain would have been rational under the circumstances," we vacate Ali's guilty plea and remand for further proceedings.

## I. Facts and Prior Proceedings

The State charged Ali and three codefendants with attempt to commit murder and robbery in the first degree in connection with a shooting at a Coralville residence on June 22, 2015. The State alleged "Ali helped the defendants gain access to a residence; then the defendants rushed into that residence demanding to know 'where's it at?'" "It" referred to marijuana they planned to steal, according to the minutes of evidence. After rushing into the residence, one of Ali's codefendants fired a .40 caliber pistol, striking a victim in the hip, "causing a through-and-through bullet wound." The State expected to offer testimony that "[t]he defendants all then fled the house, taking several cell phones; several of the victims scattered as well."

Ali was eighteen years old at the time of the crime and a legal permanent resident of the United States. After being charged with two class "B" felonies, Ali struck a bargain with the State, agreeing to plead guilty to burglary in the second degree, a class "C" felony, in violation of Iowa Code sections 713.1 and

713.5(1)(b) (2015), in return for dismissal of the attempted murder and robbery counts.

On the day of the plea hearing, defense counsel filed a document entitled "Citizenship Addendum to Plea of Guilty" in which counsel outlined the detailed advice he provided Ali concerning the "deportation or other adverse immigration consequences" of the plea to second-degree burglary. At issue is the following passage: "I have advised the Defendant if he receives a deferred judgment at the open sentencing in the above-captioned matter this scenario provides the best opportunity to avoid deportation." The addendum also stated that in making his guilty plea, Ali was "relying on undersigned counsel's advice regarding the immigration consequences." Counsel asserted the addendum was filed "pursuant to Iowa Rule of Criminal Procedure 2.8(2)(b)(5) and *Padilla v. Kentucky.*"[1]

According to the presentence investigation (PSI) report, Ali's parents brought him to the United States when he was five years old. Ali's father described his son as "a follower" whose friends were "a problem for him." Ali's mother believed Ali's co-defendants "would have killed him if he had not cooperated with them." In recommending prison, the author of the PSI report pointed to Ali's prior juvenile-delinquency adjudications and the need to protect the public from violent crime.

---

[1] "[R]ecent developments in the law regarding a defendant's right to effective assistance of counsel recognize that lawyers representing criminal defendants must advise their clients whether their pleas carry a risk of deportation." *State v. Hernandez-Galarza*, 864 N.W.2d 122, 126 (Iowa 2015) (citing *Padilla v. Kentucky*, 559 U.S. 356, 374–75 (2010)). "In *Padilla,* the Supreme Court of the United States held that a criminal defendant who pled guilty to drug charges received constitutionally deficient assistance of counsel when his lawyer failed to advise him of a serious consequence—deportation—that would automatically occur because of his conviction." *Id.* (citation omitted).

In a sentencing memorandum, defense counsel asserted Ali was born in Syria to Sudanese immigrants "who were affiliated with the Republican Brotherhood movement in Sudan." Counsel explained:

> The Republican Brotherhood was a liberal reform movement that called for greater equality for women and non-Muslims. Eventually the leader of the movement, Mahmud Muhammad Taha, was executed after opposing the imposition of Sharia law, and many of its members, including Ali's parents, fled Sudan. Ali's parents fled first to Syria, where he was born, and then eventually ended up in the United States. Ali's parents settled in Iowa City where he attended school, eventually graduating from Iowa City West High School. While Ali's parents eventually became U.S. citizens, Ali remains a legal permanent resident.

In the memo, counsel repeated his belief regarding the adverse immigration consequences: "A deferred judgment provides him the best opportunity to avoid deportation. If deported, the Defendant could be sent back to Sudan or Syria, both of which are unstable and dangerous at the present time."

The sentencing court received thirty-three letters supporting Ali from members of the Sudanese-American community both in Johnson County and across the country. One letter noted the journey to the United States was difficult for Ali's parents because "they were persecuted for their religious and political beliefs in Sudan." Many of the letter writers had known Ali since he was a young child and discussed his close relationship with his parents.

At the sentencing hearing, the State stipulated Ali was eligible for a deferred judgment but recommended incarceration based on Ali's history of breaking the law. The prosecutor reasoned: "Community affection and potential immigration consequences are powerful things, but obviously not powerful enough to influence Mr. Ali's behavior." Defense counsel asked the court to

defer judgment based on Ali's youth, his community support, and the immigration consequences. Counsel urged: "I can't think of a more powerful deterrent factor than the possibility of being deported back to either the Sudan or Syria, two of which are potentially the most volatile, dangerous places on the face of the planet right now." In his allocution, Ali apologized for "being a young, dumb teenager with selfish ways and immature schemes."

In rejecting Ali's request for a deferred judgment, the district court noted Ali received a deferred judgment on a theft charge in November 2014 and was on probation at the time of the current offense. The court sentenced Ali to an indeterminate ten-year prison term.

Ali now appeals.

## II. Error Preservation and Standard of Review

Failure to file a motion in arrest of judgment normally prevents a defendant from contesting his guilty plea on appeal. Iowa R. Crim. P. 2.8(2)(d). But Ali brings his challenge as an ineffective-assistance-of-counsel claim, which stands as an exception to the normal rules of error preservation. *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). We postpone the resolution of such claims until they can be heard in postconviction proceedings unless the parties provide a satisfactory record on direct appeal so that we can draw a conclusion about the constitutionality of counsel's performance. *See id.* In this case, we find the record adequate to resolve the issue.

Because Ali is entitled to effective assistance of counsel under the Sixth Amendment, we review his claim de novo. *See id.* To succeed, he must show by a preponderance of the evidence that (1) counsel failed to perform an

essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Unless Ali can make both showings, we cannot find his conviction resulted "from a breakdown in the adversary process that renders the result unreliable." *See id.*

In a guilty-plea case, the prejudice element "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To satisfy the prejudice requirement under *Hill*, Ali must show a reasonable probability exists that, but for counsel's faulty advice, he would not have pleaded guilty and would have insisted on going to trial. *See id.; see also State v. Straw*, 709 N.W.2d 128, 138 (Iowa 2006).

In an immigration-consequences case, the prejudice showing requires an allegation that rejecting the plea "would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. The test is not whether the defendant ultimately would have been convicted following a trial but, rather, whether a reasonable probability exists that, but for counsel's error, the defendant would have insisted on going to trial. *See People v. Morones-Quinonez*, 363 P.3d 807, 811 (Colo. App. 2015) (explaining "the strength of the evidence against the defendant may not be as probative of rationality as it would be in a nonimmigration case"); *Sial v. State*, 862 N.E.2d 702, 706 (Ind. Ct. App 2007) (relying on facts that defendant had been living in United States for twenty years and had a wife and United States-citizen daughter to find he would have forgone plea and proceeded to trial).

### III. Analysis

Ali asks us to find he received ineffective assistance of counsel in the guilty-plea proceedings, which resulted in his plea being involuntary and unintelligent. As a remedy, he seeks a reversal of his conviction and remand for further proceedings.

Ali starts with the duty prong, asserting his plea counsel provided inaccurate advice concerning the possibility of removal flowing from a deferred judgment following adjudication for burglary in the second degree. Ali points out, under the Immigration and Nationality Act (INA), burglary second constituted an "aggravated felony," 8 U.S.C. § 1101(a)(43)(G), and a lawful permanent resident[2] convicted of an aggravated felony is subject to removal from the United States, *see id.* § 1227(a)(2)(A)(iii). Ali further argues that under federal law, the term "conviction" includes instances where a noncitizen enters a guilty plea even when adjudication of guilt has been withheld, if the judge has imposed some form of penalty or restraint on the noncitizen's liberty. *See id.* § 1101(a)(48)(A). According to Ali's argument, a deferred judgment under Iowa Code section 907.3 falls into the category of a "conviction" for purposes of federal immigration law.[3]

---

[2] A lawful permanent resident is an immigrant residing permanently in the United States, but who has not yet become a naturalized citizen. 8 U.S.C. § 1101(a)(20). The documentation provided to the immigrant showing his status as a lawful permanent resident is commonly known as a "green card." *See Zemene v. Clarke*, 768 S.E.2d 684, 686 n.1 (Va. 2015).

[3] Our supreme court examined a similar scenario involving the deportation consequences of a deferred judgment in *Hernandez-Galarza*, 864 N.W.2d at 126 ("Hernandez-Galarza now alleges that after receiving a deferred judgment he became ineligible for cancellation of removal proceedings under federal immigration law because he no longer qualifies for the petty-offense exception. As such, he asserts he is subject to removal from the United States." (citations omitted)).

As a result, Ali contends plea counsel provided misinformation in advising him that a deferred judgment provided "the best opportunity to avoid deportation."

On the prejudice prong, Ali argues, as a result of being misadvised by counsel, he believed his "only option to avoid deportation to Syria or Sudan was to plead guilty to an 'aggravated felony' and try for a deferred judgment." Ali asserts he "grasped at the chance" and was prejudiced as a result.

The State does not dispute Ali's interpretation of the INA, nor does the State defend plea counsel under the duty prong of *Strickland*.[4] *See Padilla*, 559 U.S. at 368–69 (stating "when the deportation consequence is truly clear, [then] the duty to give correct advice is equally clear"). Instead, the State concentrates on the prejudice prong, arguing "even if trial counsel breached an essential duty by giving the defendant inaccurate information about the deportation consequences of his guilty plea, the defendant cannot show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" The State highlights Ali's knowledge that he was not guaranteed to receive a deferred judgment and lists the beneficial aspects of the plea bargain as to charging concessions and potential prison time.

The State's position might hold more sway in an ordinary guilty-plea case, but it overlooks the extra considerations in a case governed by the prejudice

---

[4] This case differs from cases where this court has preserved the issue for postconviction actions. In those cases, we did not have an adequate record to determine what advice counsel gave the defendant concerning the immigration consequences of a guilty plea. *See, e.g., State v. Rodriguez*, No. 16-0286, 2016 WL 6902774, at *1 (Iowa Ct. App. Nov. 23, 2016); *State v. Porte*, No. 15-1159, 2016 WL 3556451, at *1 (Iowa Ct. App. June 29, 2016); *State v. Cantarero*, No. 12-1694, 2013 WL 3274219, at *2 (Iowa Ct. App. June 26, 2013); *State v. Dzopa*, No. 12-0780, 2013 WL 264333, at *4 (Iowa Ct. App. Jan. 24, 2013); *State v. Callejas-Solorzano*, No. 10-1189, 2011 WL 2112429, at *2 (Iowa Ct. App. May 25, 2011).

calculation from *Padilla*. In *Padilla*, the Supreme Court recognized "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." *Id.* at 368 (alteration in original) (citation omitted). But for plea counsel's misinformation concerning the immigration implications of a deferred judgment, Ali would have had two options to weigh: (1) risk removal to Syria or the Sudan based on *any plea of guilty* versus (2) go to trial with the chance—however slim—of being acquitted and not facing removal from the United States. Given these stark options, we find it would have been rational under the circumstances for Ali to reject the State's plea offer. *See id.* at 372 (expressing confidence that courts experienced in applying *Strickland* prejudice can use this new framework to separate "specious claims from those with substantial merit"); *Morones-Quinoez*, 363 P.3d at 810 (stating "in the context of a decision to forgo a guilty plea based on immigration considerations, the defendant need only make some showing that the decision would have been rational").

In evaluating a proposed plea offer, "a noncitizen defendant confronts a very different calculus than that confronting a United States citizen." *Commonwealth v. Lavrinenko*, 38 N.E.3d 278, 293 (Mass. 2015) ("A defendant may fervently desire to remain in the United States because of the depth and quality of the roots he or she has planted in this country." (citation omitted)); *see also People v. Kazadi*, 284 P.3d 70, 75 (Colo. App. 2011) (noting defendant's "personal circumstances and lack of ties to the Congo support his assertion that he would not have pleaded guilty had he received the advice that he was constitutionally entitled to receive"); *People v. Amad*, No. 1-14-0612, 2016 WL

3574365, at *9 (Ill. App. Ct. June 30, 2016) (holding that because a "long-time resident of this country with family ties here may be prejudiced by his counsel's failure to inform him of the deportation consequences of his guilty plea, even if he likely would have been convicted at trial and given a longer prison sentence than" the guilty-plea sentence, such "a person may rationally decide to reject a plea agreement and go to trial even where the evidence is against him, as long as there is even the *slightest* chance he may prevail at trial and avoid being deported away from his family, friends, and country").

On appeal, Ali argues he would not have entered a guilty plea had he known his plea offered no option of avoiding removal to Syria or the Sudan. While Ali did not have an opportunity to present evidence at a hearing on the issue of prejudice, the plea and sentencing record includes background information about his status as a legal permanent resident; his integration into the Iowa City community during his entire youth (ages five to eighteen); the flight of his political-refugee parents, now naturalized U.S. citizens, from the Sudan to Syria; and the current unrest and instability in those countries of origin. None of this information was disputed by the State in the district court or on appeal. *See Padilla*, 559 U.S. at 372 (discussing requirement that rejecting the plea "would have been rational under the circumstances"). Based on this specific factual scenario, we find Ali has established prejudice under *Padilla* and *Strickland*. Because Ali received ineffective assistance of counsel, rendering his plea involuntary and unintelligent, we set aside the judgment and sentence in the

guilty-plea proceeding and remand for further proceedings to allow Ali to plead anew.  *See State v. Kress*, 636 N.W.2d 12, 21 (Iowa 2001).

**CONVICTION AND SENTENCE VACATED; CASE REMANDED WITH DIRECTIONS.**